## GYPSY OIL CO. v. COVER et al.

No. 10916—Opinion Filed March 2, 1920.

Rehearing Denied April 27, 1920.

(Syllabus by the Court.)

### 1. Oil and Gas—Lease—Covering Separate Tracts—Construction—Production on One Tract—Effect.

Where an oil and gas mining lease covers 160 acres of land, and 120 acres thereof are contiguous and the other 40-acre tract is located one-half mile therefrom, and the lessee assigns the 40-acre tract and the assignee brings in a producing well producing oil and gas in paying quantities within the one-year period stipulated for in the lease and pays the royalties reserved to the owner of the land, which are accepted by such owner according to the terms of the lease, and the lease contains the stipulation "that this lease shall remain in full force for the term of five years from this date, and as long thereafter as oil and gas or either of them is produced therefrom by the party of the second part, successors or assigns," these facts do not make the lease a separate lease upon each tract of land, but the same remains a lease upon the entire 160 acres, and the drilling of such well on any portion thereof and the payment of the royalties extend the life of the lease upon the entire 160 acres.

### 2. Same—Estate of Lessee in Premises for Further Operations After Five-Year Term.

After gas was found upon the leased premises within five years from the date of the lease in paying quantities, the lessee thereby became vested with a limited estate in the leased premises for further operations in accordance with the terms of the lease.

### 3. Judgment—Persons Concluded — Grantee of Land Not a Party.

A grantee of land is not bound by a judgment in an action, to which he is not a party, commenced against his grantor subsequent to the grant.

### 4. Oil and Gas—Suit to Cancel Lease—Trust Relation Between Lessee and Assignee.

Where a trust relation existed between the lessee in an oil and gas mining lease and a third person, as to one of the two tracts of land covered by the lease at the time the lease was executed by the lessors, and some time thereafter the lessee, upon the payment to it by the person for whose benefit the trust existed, of the bonus agreed upon, and at his request the lessor assigned the lease to such other, covering said tract, which assignment has been treated as valid by the lessee and the purchasers of the fee in the land covered by the lease, held, that such trust relation is not available to the purchasers of the fee as a ground for suit for the cancellation of the lease covering the other tract.

### 5. Same—Sufficiency of Evidence to Cancel Lease.

Where an oil and gas mining lease gave the lessee, his successors, or assigns, one year from date thereof to complete a well or pay at the rate of $160 in advance for each additional 12 months such completion was delayed, and providing that the completion of such well should operate as a full liquidation of all rent, during the remainder of the term of the lease, which was for five years, and where the assignee of the lessee to a portion of the leased premises completed a well upon such portion within one year and such well continued to produce oil and gas in paying quantities and assignee continued to operate said well and pay the landowners the royalties reserved to them for the full term, and where the lessee neither drilled on the unassigned portion of the lease, nor paid delay money during the term, and some time after the term expired the landowners brought suit to quiet the title to the unassigned portion of the premises, and asked that the lease as to such portion be forfeited for failure to drill and operate and develop the same, and where, upon the trial of the cause, the court announced as his findings "that the plaintiffs are the owners of the land and went in possession of the premises at the time of taking their deed, and have retained possession since that date," and entered a judgment in favor of the plaintiffs quieting their title to the premises and canceling the lease of the defendant, held, that from an examination of the record it clearly appeared that the plaintiffs alleged no facts nor offered proof of facts such as would be sufficient to authorize the court to cancel the lease for a breach of the implied covenants to diligently operate and develop the premises; that the demurrer of the defendant to the evidence of the plaintiffs should have been sustained; that the judgment of the trial

court should be reversed and the cause remanded.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by Charles Cover and George James against the Gypsy Oil Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

James B. Diggs and William C. Liedtke, for plaintiff in error.

W. W. Calhoun and George James, for defendants in error.

JOHNSON, J. This is an appeal from the district court of Okmulgee county. On the 19th day of September, 1918, the defendants in error, Charles Cover and George James, as plaintiffs, commenced an action in the district court of Okmulgee county against the plaintiff in error, the Gypsy Oil Company, a corporation, as defendant, to quiet title to certain real estate situated in said county. For convenience, the parties will hereinafter be referred to as plaintiffs and defendant, respectively, as they appeared in the trial court.

The essential allegations of the plaintiffs' petition are as follows:

"That the plaintiffs are the legal owners in fee simple and in the actual and peaceable possession by their tenant, G. S. P. Washington, of the following described premises, situated in Okmulgee county, state of Oklahoma, to wit: The southeast quarter of the southeast quarter of section 31, and the southwest quarter of the southwest quarter of section 32, township 15 north, range 12 east, and the northwest quarter of the northwest quarter of section 5, township 14 north, range 12 east. That the said defendant claims some right, title or interest in and to said property adverse to these plaintiffs, the exact nature of which to them is unknown, which constitutes a cloud on the title of plaintiffs."

The defendant answered, claiming a valid oil and gas lease upon the premises, and deraigned title thereto from the heirs of Mary Harjo, deceased, the original allottee. The allegations of the defendant were, in effect, that said allottee died intestate leaving as her sole heirs her five children, three of whom, Ben Harjo, Cinda Harjo, and Salina Harjo, were adults; that Buzzy Harjo and Sarah Harjo, were minors; that each inherited an undivided one-fifth interest in said allotment; that prior to the execution of the defendant's lease to the entire allotment of 160 acres, said adult heirs had conveyed their interest in said allotment to Lewis Adams, Thomas Adams, Jr., and Wash Adams; and

that thereafter on January 28, 1910, the Adamses, together with Thomas Adams, as guardian of Sarah Harjo and Buzzy Harjo, minors, and as administrator of the estate of Mary Harjo, deceased, executed to the defendant an oil and gas lease to the entire 160-acre allotment, which was duly approved by the county court of Okmulgee county on said date; and that thereafter defendant executed and delivered to George S. Davis a deed of assignment to the SE¼ of the SE¼ of section 5, township 14 north, range 12 east; and that thereafter the said George S. Davis assigned a three-fourths interest in said tract to the Producers Oil Company, which, in turn, afterward assigned the same to the Texas Company; and that prior to the expiration of one year from the date of said oil and gas lease, a producing well was completed upon the said tract by the Producers Oil Company and G. S. Davis, which had ever since been producing oil and gas in paying quantities, and had been operated for the production of oil and gas, and that the royalty reserved by said lease to the lessors upon the oil and gas produced upon said land had been paid to the plaintiffs and their predecessors according to the terms of the said oil and gas lease, and accepted by them, and that said assignees had paid, kept, and performed all of the conditions, covenants, and agreements provided in said lease, and that the defendant had a valid and subsisting leasehold estate covering the remaining 120 acres of said allotment, and that the same was in full force and effect. The defendant made copies of said conveyances exhibits to its answer.

The plaintiffs replied to said answer, admitting the allegations of the defendant except as to the validity of the lease upon the 120 acres sued for herein, alleging that the same was invalid, because (1) the defendant took title under its lease to the 40-acre tract as trustee only and in trust for one John J. McCrory, and when the defendant assigned the same to George S. Davis the trust and the purpose for which it was created ceased and terminated all the rights and interest held by the defendant, and on account thereof the defendant is estopped to claim any right, title, or interest to said 40 acre tract; and (2) the deeds from the adult heirs to the Adamses had been canceled by the district court of Okmulgee county in a certain action brought by said adult heirs against the Adamses for that purpose and alleging that no well had been completed on the 120 acres nor rentals paid thereon by the defendant.

Plaintiffs prayed that their title be quieted. To which reply the defendant interposed a

demurrer, which being overruled, the defendant moved for a judgment upon the pleadings, which was overruled by the court, to each of which rulings the defendant saved exceptions.

Upon the issues thus joined, the cause was tried to the court. At the conclusion of the plaintiffs' testimony the defendant interposed a demurrer to the evidence, which demurrer was overruled by the court and exception saved by the defendant, whereupon the court made the following finding:

"The court finds that the plaintiffs are the owners of the land in controversy and went into possession of the premises at the time of the taking of said deed, Exhibit Number One, and have retained possession of the land since that date. I will just find for the plaintiffs and against the defendant and you can prepare your journal entry. Defendant excepts to the findings and the judgment of the court."

The defendant filed its motion for new trial, which was overruled by the court. Thereafter, in due time, this proceeding in error, to reverse the judgment of the trial court, was regularly commenced.

The trial court was not requested to nor did it make and file separate findings of fact. The plaintiff in error assigns numerous errors in its petition in error, but its counsel say in their brief:

"The case of the plaintiff in error is grounded upon the settled and established law that the production of oil and gas upon any portion of the leased premises in compliance with the provisions of the oil and gas lease, vests in the lessee, or his assigns, the right to continue the production from all of the leased premises. For the sake of clarity in this brief, the case is discussed under two subheads: (1) The legal relationship between the Gypsy Oil Company and John L. McCrory, appearing from the recitals in the deed of assignment, does not change or affect in any way the rights and obligations created by the oil and gas lease; and (2) the production of oil on part of the leased premises by Davis and his assigns in compliance with the terms of the lease, extended the primary term of the lease as long as oil or gas is produced, and vested in the lessee, and its assigns, the right to produce oil or gas from all of the leased premises."

In answer to the foregoing propositions of the plaintiff in error, counsel for defendants in error say in their brief:

"The case presents three questions for the court's decision: (1) The title of the Gypsy Oil Company as to the interest of Salina, Ben, and Cinda Harjo; (2) failure to drill and develop the 120 acres of land, the lease upon which was for the use of the Gypsy Oil Company; (3) the implied covenant to reasonably develop the entire demised premises, in the event it should be held that the drilling of a producing well on the forty-acre tract by Davis and the Producers Oil Company within one year was a sufficient compliance with the covenant of the lease to develop the premises and to operate the same during the primary term thereof."

The essential parts of the defendant's lease to the 160 acres and its assignment to Davis of the 40 acres follow:

"Witnesseth: That the said parties of the first part, for and in consideration of the sum of one dollar to them in hand well and truly paid by the said party of the second part, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the party of the second part to be kept, paid and performed, have granted, demised, leased and let and by these presents do grant, demise, lease and let unto the said second party, its successors or assigns, for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines, constructing tanks, buildings and other structures thereon to take care of said products, all that certain tract of land situate in the county of Okmulgee, state of Oklahoma, described as follows, to wit:

"The SE¼ of the SE¼ of Sec. 31, and the SW¼ of the SW¼ of Sec. 32, Twp. 15 North, Range 12 East, and the NW½ of the NW¼ and the SE¼ of the SE¼ of Sec. 5, Twp. 14 north, range 12 east, and containing 160 acres more or less.

"It is agreed that this lease shall remain in full force for the term of five years from this date, and as long thereafter as oil and gas or either of them is produced therefrom by the party of the second part, successors or assigns. * * *

"The party of the second part agrees to complete a well on said premises within one year from the date hereof or pay at the rate of one hundred and sixty dollars in advance for each additional twelve months such completion is delayed from the time above mentioned for the completion of such well until a well is completed; and it is agreed that the completion of such well to 2200-foot sand shall be and operate as a full liquidation of all rent under this provision, during the remainder of the term of this lease.

"All covenants and agreements herein set forth between the parties hereto shall extend to their successors, heirs, executors, administrators and assigns, and these covenants for the benefit of first parties shall extend to them as their interests may appear."

"Deed of Assignment"

"This contract and agreement made and entered into this the 23rd day of February, 1910, by and between Gypsy Oil Company, a corporation, party of the first part and George S. Davis, party of the second part, does Witness, that;

"Whereas, the Gypsy Oil Company secured an oil and gas mining lease covering the southeast quarter of the southeast quarter of section five, township fourteen, range twelve east in Okmulgee county, Oklahoma, and;

"Whereas, said land was included in said lease before the same was accepted by the Gypsy Oil Company, and the Gypsy Oil Company did not desire to take an oil and gas mining lease on said above described land, and;

"Whereas, John L. McCrory was the owner of an option of the oil and gas mining lease on said above described land, and it was at the time said lease was drawn and executed, presumed by him that the Gypsy Oil Company desired to take a lease on said land, when in fact the Gypsy Oil Company did not so desire, and;

"Whereas, at the time of the acceptance of the above lease on said lands, it was understood and agreed that the Gypsy Oil Company should furnish the entire consideration for an oil and gas mining lease on all the lands described therein, and said John J. McCrory should refund to the Gypsy Oil Company, the part of the consideration for said lease which would be the proportionate part of said purchase price for said above described lands and said price was then and there agreed upon to be $1,600.00, and;

"Whereas, the said John J. McCrory has paid to the Gypsy Oil Company the sum of $1,600.00 and has requested the Gypsy Oil Company to assign said lease in so far as the same covers the above described land to George S. Davis; now,

"Therefore, in consideration of the premises the party of the first part hath this day, granted, bargained, sold, transferred, and assigned and by these presents doth hereby grant, bargain, sell, transfer and assign to George S. Davis, his heirs and assigns, all of its right, title, interest and estate in and to its certain oil and gas mining leases and leasehold estates, in and to the above described land."

We will notice the first contention of the plaintiffs, which is that the interest acquired, three-fifths of the whole, by the defendant from the Adamses, was lost by reason of the judgment of the district court canceling the deeds from the adult heirs of Mary Harjo to the Adamses, and that thereafter the plaintiff acquired the fee of all the heirs, concerning which counsel for plaintiffs say in their brief:

"It is true that the Gypsy Oil Company was not a party to the suits brought by Salina, Ben, and Cinda to cancel the conveyances made by them to the Adamses. But the Gypsy Oil Company is a party to this suit; indeed, it is the only party, and the very purpose of the suit is to cancel and set aside the lease of January 28, 1910. The decree canceling these deeds was set up in the plaintiffs'. reply, to which no objection on the grounds of departure, or otherwise, was made. The record was introduced at the trial showing that the deeds to the Adamses from the Harjo heirs named were canceled and set aside. It is through these deeds, it should be kept in mind, that the Gypsy Oil Company obtained whatever title it may have had, as to a three-fifths interest in the land."

We cannot agree with counsel in this contention. It being admitted that the defendant was not a party to the suit, then its rights were not affected by the judgment rendered. Such was the holding of this court in the case of Blackwell v. McCall, 54 Oklá. 96, 153 Pac. 815, where it was said (paragraph 1, syllabus):

"A grantee of land is not bound by a judgment in an action, to which he is not a party, commenced against his grantor subsequent to the grant." DeWatteville v. Sims, 44 Okla. 708, 146 Pac. 224; Dull v. Blackman, 169 U. S. 243, 42 L. Ed. 733; Freeman on Judgments, (1st Ed.) 162.

Concerning the plaintiffs' second proposition. "Failure to drill and develop the 120 acres of land leased to the Gypsy Oil Company," counsel say in their brief:

"In brief, it is the contention of plaintiff in error that, as Davis and the Producers Oil Company drilled and brought in a producing oil well on the southeast quarter of the southeast quarter (SE¼ SE¼) of section 5, township 14 north, range 12 east, within one year from the date of the lease, thereby the covenants of the lease in respect to the drilling and operation of the premises for oil and gas have been complied with and, hence, plaintiffs are not entitled to a decree of cancellation. This contention, we say, cannot be sustained, for at least two reasons. First, the Gypsy Oil Company never had any title, legal or equitable, in and to the foregoing 40 acre tract. Second, if in this we are mistaken, then the lease as to the 120 acres, admittedly made to and for the use and benefit of the Gypsy Oil Company, terminated before the bringing of the present suit for failure to drill and operate the premises according to the terms of the lease, or at least was subject to forfeiture for failure to develop. Under this subdivision we shall consider only the first of the two propositions.

"The agreement of January 28, 1910, purports on its face to be a lease of 160 acres of land to the Gypsy Oil Company. The southeast quarter of the southeast quarter (SE¼ of the SE¼) of section 31; the southwest quarter of the southwest quarter (SW¼ of the SW¼) of section 32, township 15 north, range 12 east, and the northwest quarter of the northwest quarter (NW¼ of the NW¼) of section 5, twp. 14 north, range 12 east, are adjoining tracts, while the southeast quarter of the southeast quarter (SE¼ of the SE¼) of section 5, twp. 14 north, range 12 east, is a separate tract, at the nearest

point a distance of more than one-half mile from the 120 acre tract.

"On February 23, 1910, the Gypsy Oil Company, at the request of John J. McCrory, executed in writing an assignment, or release, to the separate 40 acres tract. This release, as we read it, recites, in effect, that it was not the purpose or the intention of the Gypsy Oil Company 'to take an oil and gas mining lease on said above described lands,' that at the time thereof John J. McCrory was owner of an option on an oil and gas mining lease on such tract, and that at the time the lease was entered into it was understood and agreed by the Gypsy Oil Company and McCrory that upon the payment of a fixed amount the Gypsy Oil Company would release of record any title standing in its name. This combined declaration of trust and assignment was duly executed by the officers of the Gypsy Oil Company. Considered in connection with the oil and gas mining lease, this instrument constituted a dry, passive express trust, or power in trust, and was executed by the statute of uses and trust. (Article IV, chap. 65, Revised Laws.)"

We cannot agree with counsel in their contention. As we view the transactions of the parties as disclosed by the recitations contained in the lease and the assignment, the lessors granted to the lessee all the rights and estate conveyed by the usual and customary form of an oil and gas mining lease, to the entire 160 acres, and the lease granted to the lessee the power to assign all or any portion of the leased premises. It is apparent from the recitations of the assignment to Davis of the 40 acre tract that prior to the execution of the lease one McCrory owned some sort of option for an oil and gas mining lease on said 40-acre tract, the exact nature of which is not disclosed, but the fact that he owned it is not disputed and has ever since been recognized by all the parties; by the lessee in making the assignment in consideration of the payment to it of the proportionate part, $1,600, of the bonus paid for the entire tract of 160, by McCrory in directing that the assignment be made to Davis, and by the plaintiffs as purchasers of the fee in the land by accepting the royalties reserved in the lease. So, whatever the rights of McCrory may have been by reason of his option to purchase a lease upon the 40 acre tract, the same have been protected by all the parties and acquiesced in by them. In these circumstances we know of no reason why the usual rule as to the vesting of the lessee's right to produce, should not apply to this case.

The plaintiffs are the successors in interest of the original lessors who made the oil and gas lease to the defendant. The lease is still in force, and the plaintiffs are claiming under

it and have been receiving the benefits therefrom.

The assignment was from the lessee to Davis, and the instrument was evidence of a transaction which was authorized by the terms of the lease, and did not affect the rights of the lessors or their assigns, but only the lessee. It did not change the rights, duties, or obligations of the lessors or their successors in interest. Thornton on Oil & Gas (3rd Ed.) 219; Chandler v. Hart (Cal.) 119 Pac. 516.

The plaintiffs' next contention is that the lease as to the 120 acres terminated before the bringing of this action for failure to drill and operate the premises according to the terms of the lease, or was subject to forfeiture for failure to develop.

It is admitted that one producing well was put down by Davis and the Producers Oil Company within one year from the date of the lease; also, that no well was drilled on the 120 acre tract nor rentals paid. This court held, in the case of Roach v. Junction Oil & Gas Company, 72 Oklahoma, 179 Pac. 935, that after gas was found upon the leased premises within five years from date of lease in paying quantities, the lessee thereby became vested with a limited estate in the leased premises for further operations in accordance with the terms of the lease (citing Brennan v. Hunter, 68 Oklahoma, 172 Pac. 49, citing numerous cases). In Pierce Oil Corporation v. Schacht, 75 Okla. 101, 181 Pac. 731, it was held that where a lease covered a tract of 160 acres and an assignment was thereafter made to 40 acres, upon which a gas well was brought in and the royalties paid, from that time on there would be no indebtedness for future rentals and this would not only apply to the portion of the land where the gas well was situated but to the land in its entirety, and the payment of said stipulated royalties continued the lease in force and effect as to the entire 160 acres of land. We are aware that this court has held that oil and gas leases will be so construed as to promote development and prevent delayed productiveness. Paraffine Oil Co. v. Bruce, 63 Oklahoma, 162 Pac. 716; New State Oil & Gas Co. v. Dunn, 75 Okla. 141; Curtis v. Harris, 76 Okla. 226. This court has also held that a court of equity will, where necessary, decree forfeiture of oil and gas leases on account of a breach of an implied covenant to diligently operate and develop the property, when such forfeiture will perpetuate justice (Ind. Oil & Gas Co. v. McCrory, 42 Okla. 136, 140 Pac. 610; Blackwell Oil & Gas Co. v. Whitesides, 71 Oklahoma, 174 Pac. 573), and such have

been the holdings of the federal courts in numerous cases, the leading case being that of Brewster v. Lanyon Zinc Co., 140 Fed. 801.

This lease is for a period of five years from date and as long thereafter as oil and gas or either of them is produced from the premises by the lessees, its successors or assigns. This lessee agrees to complete a well on the premises within one year or pay at the rate of $160 in advance for each additional twelve months completion is delayed, until a well is completed. The lease contains no covenant as to the number of wells to be drilled on the premises. The lease contains no express stipulation that anything should be done in the way of drilling for and producing oil and gas after the first five years. We think the rule announced by this court in the cases cited, supra, is the rule to be applied here, which is thus stated in Brewster case:

"There could not well have been an express stipulation as to the number of wells to be drilled, as to when the wells, other than the first, should be drilled, or as to the rate at which the production therefrom should proceed, because these matters would depend in the large measure upon future conditions, which could not be anticipated with certainty, such as to the extent to which oil and gas, one or both, could be produced from the premises, as indicated by the first well and any others in the vicinity, the existence of a local market or demand therefor or the means of transporting them to a market, and the presence of wells on adjacent lands capable of diminishing or exhausting the supply in the natural reservoir. The subject was, therefore, rationally left to the implication, necessarily arising in the absence of express stipulation, that the further prosecution of the work should be along such lines as would be reasonably calculated to effectuate the controlling intention of the parties as manifested in the lease, which was to make the extraction of oil and gas from the premises of mutual advantage and profit. Even in respect of the first well, if oil and gas was found in paying quantity, there was no express agreement to operate it, but that it was intended to be operated was plainly implied in the engagement to pay royalties to be gauged according to the production of oil and the use of gas. Whatever is necessary to the accomplishment of that which is expressly contracted to be done is part and parcel of the contract, though not specified. * * *"

With these rules in mind let us examine the circumstances surrounding the parties as disclosed by the record for the purpose of applying the rules to the facts. The finding of the trial court was as follows:

"The court finds that the plaintiffs are owners of the land in controversy and went in possession of the premises at the time of taking said deed, Exhibit Number One, and have retained possession of the land since that date."

The facts thus found would not be sufficient to authorize the court to cancel the lease for a breach of an implied covenant to diligently operate and develop the premises. Concerning that matter the learned judge in the opinion in the Brewster case, supra, said:

"There can, therefore, be a breach of the covenant for the exercise of reasonable diligence, though the lessee be not guilty of fraud or bad faith. But, while this is so, no breach can occur save where the absence of such diligence is both certain and substantial in view of the actual circumstances at the time, as distinguished from mere expectations on the part of the lessor and conjecture on the part of mining enthusiasts. The large expense incident to the work of exploration and development, and the fact that lessee must bear the loss if the operations are not successful, require that he proceed with due regard to his own interests as well as those of the lessor. No obligation rests on him to carry the operations beyond the point where they will be profitable to him, even if some benefit to the lessor will result from them. It is only to the end that the oil and gas shall be extracted with benefit or profit to both that reasonable diligence is required. Whether or not in any particular instance such diligence is exercised depends upon a variety of circumstances, such as the quantity of oil and gas capable of being produced from the premises, as indicated by prior exploration and development, the local market or demand therefor, or the means of transporting them to market, the extent and results of the operations, if any, on adjacent lands, the character of the natural reservoir—whether such as to permit the drainage of a large area by each well—and the usages of the business. Whatever, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interest of both lessor and lessee, is what is required."

The trial court made no findings upon any of the conditions pointed out in the excerpt from the opinion, supra, that would authorize a decree of forfeiture of the lease on account of a breach of an implied covenant to diligently operate and develop the property, undoubtedly for the all sufficient reason that neither the petition nor reply of the plaintiffs contained any allegation that any such condition existed, nor was there a single word in the testimony of the plaintiffs to that effect.

The record contains the following stipulation:

"By Mr. James: It is stipulated and agreed by and between the plaintiffs and the defendant herein that the deed of assignment set up in plaintiffs' reply show-

ing an assignment of 40 acres of land on the 23rd day of February, 1910, by the Gypsy Oil Company to George S. Davis, was executed by the Gypsy Oil Company and that the same was of record in the office of the county clerk, or register of deeds, of Okmulgee county, Oklahoma, at the time plaintiffs purchased the land in controversy, on the land in said deed of assignment."

We have carefully examined the entire record, and are clearly of the opinion that the defendant's demurrer to the evidence should have been sustained. The judgment is reversed and the cause remanded, and the trial court directed to proceed in accordance with the views herein expressed.

RAINEY, V. C. J., and KANE, PITCHFORD, McNEILL, HIGGINS, and BAILEY, JJ., concur. OWEN, C. J., and HARRISON, J., not participating.