Argued October 29, 1917, affirmed January 15, **motion to retax costs** overruled April 9, 1918.

# CLARKE–WOODWARD DRUG CO. *v.* HOT LAKE SANATORIUM CO.*

(169 Pac. 796.)

**Mortgages—After-acquired Property—Priority Over Judgment.**

1.   The lien of a mortgage on property which the mortgagor may "hereafter acquire" *held* superior to the lien of a subsequent judgment on such property.

> [As to mortgage of after-acquired property and of property having only a potential existence, see notes in 46 **Am. Dec.** 712; 109 **Am. St. Rep.** 510.]

**Fraudulent Conveyances—Satisfaction of Mortgage.**

2.   A judgment creditor is not prejudiced by a corporation's conveyance of property subject to a recorded mortgage covering after-acquired property, where no fraud was disclosed, especially where the property's value was less than the mortgage debt.

**Corporations—Bondholders—Priorities—Judgment.**

3.   Bondholders under a mortgage of a corporation covering after-acquired property who consented to a sale of part of such property upon condition that the proceeds be used in maintaining the remaining property, etc., have a lien on such proceeds, including an unexpended balance, superior to a judgment creditor's lien.

**Corporations—Conveyance in Fraud of Creditors.**

4.   The sale of a portion of heavily mortgaged property of a corporation to obtain funds for maintaining the remaining portion *held* not fraudulent as against a judgment creditor.

**Corporations—Conveyance in Fraud of Creditors.**

5.   Leasing by a corporation of heavily mortgaged sanatorium property to another corporation in which a railroad was interested *held* not fraudulent as to a judgment creditor, especially since the prior mortgage exceeded the property's value.

**Corporations—Insolvency—Distribution of Assets.**

6.   An insolvent corporation's assets will be applied first to secured debts and then to unsecured debts *pro rata*.

## From Union: John W. Knowles, Judge.

---

*As to validity of mortgage, other than railroad mortgage, covering after-acquired realty, see note in 21 L. R. A. (N. S.) 843.

This suit is based on the judgment in the case of *Clarke-Woodward Drug Co.* v. *Hot Lake Sanatorium*, 75 Or. 234 (146 Pac. 135).

Reporter.

In Banc.

This was a creditor's suit brought to impress the lien of plaintiff's judgment upon certain property of the defendants, and for other purposes which will more fully appear.  The great length of the pleadings precludes the reproduction of them here, but briefly stated the situation is as follows: The plaintiff is a corporation doing a wholesale and retail drug business in Portland, Oregon.  The Hot Lake Sanatorium Company and the Hot Lake Home and Sanatorium Company and the Topaz Land Company are corporations whose objects will hereinafter appear.

At a time anterior to the twentieth day of March, 1906, the Hot Lake Sanatorium Company was engaged in operating a sanatorium in connection with baths at Hot Lake in Union County, Oregon, and for that purpose owned a tract of land which will be hereinafter referred to as tract 1, upon which the Hot Springs used in connection with its sanatorium and also the building itself was situated.  On March 20, 1906, for the purpose of its business, the Hot Lake Sanatorium Company issued $250,000 of interest-bearing bonds, and to insure said issue executed a deed of trust in the nature of a mortgage upon tract No. 1, all of its personal property, and upon all the property that it should thereafter acquire.  The Eastern Oregon Savings Bank was named as trustee but on September 23, 1912, it resigned and P. L. Willis, a large stockholder and bondholder was duly chosen to succeed it, and continued to act as such trustee up to the institution of this suit.  On May 16, 1911, the Hot Lake Sanatorium Company became indebted to the plaintiff in the sum of $3,347.08, which sum—less certain payments thereon—was reduced to judgment against said company

on April 9, 1914, which judgment was for the sum of $3,188.08, with interest at the rate of six per cent per annum, and was duly docketed in Union County and an execution issued thereon and returned *nulla bona.* At the time the debt was contracted the execution defendant was the owner of four tracts of land, namely, tract 1 hereinbefore mentioned, and tracts 3, 4 and 5, which last three were acquired subsequent to the execution of the trust deed above mentioned. The complaint alleges that about December 18, 1912, the defendant Hot Lake Sanatorium Company with a view of going out of business transferred and conveyed all its property both real and personal, including all the above-mentioned tracts of land, to the Hot Lake Home and Sanatorium Company, and ever since said date the first-named company has not engaged in any regular business; that the Hot Lake Home and Sanatorium Company received said property and conveyances with a view of continuing the business theretofore conducted by the Hot Lake Sanatorium Company; that the conveyance was without consideration and caused the Hot Lake Sanatorium Company to be insolvent and without any property or funds with which to pay its debts, and especially the debt due plaintiff, and that this fact was well known to all of the defendants; that from December 18, 1912, to June 10, 1913, the business was conducted by the Hot Lake Home and Sanatorium Company; that during the time the latter company was so conducting the business it became involved in financial difficulties and with a view of going out of business, as each and all the defendants well knew, it delivered possession of all its property to P. L. Willis and Walter M. Pierce, said property being the same which it received from the Hot Lake Sanatorium Company, and that Willis and Pierce received the property

with a view of continuing the business theretofore conducted by the Hot Lake Home and Sanatorium Company, and that ever since that time Willis and Walter M. Pierce have controlled and directed the disposition of said property.

That on June 10, 1913, P. L. Willis and Walter M. Pierce, for the purpose of hindering, cheating and defrauding the creditors of the Hot Lake Sanatorium Company and the Hot Lake Home and Sanatorium Company, and especially plaintiff, sold, transferred and disposed of all of said property in the manner following: Tract No. 1 with all the personal property was leased to the defendant Hot Lake Springs Company, upon such terms that neither the Hot Lake Sanatorium Company nor Hot Lake Home and Sanatorium Company have received or will receive any property, money or funds therefrom with which to pay any unsecured corporate debts; tracts 2, 3 and 4 were conveyed to G. A. Pierce without consideration, which caused defendant Hot Lake Home and Sanatorium Company to be insolvent and without property and funds of any kind; that thereafter and about November 13, 1913, the defendant G. A. Pierce acquired the legal title to tract No. 4; that from and after June 10, 1913, the defendant Hot Lake Home and Sanatorium Company ceased to do any regular business whatever and the defendant Hot Lake Springs Company carried on the business before carried on by the Hot Lake Home and Sanatorium Company; that by virtue of said lease the defendant Hot Lake Springs Company received from the defendants Hot Lake Sanatorium Company, Hot Lake Home and Sanatorium Company, P. L. Willis and Walter M. Pierce the sum of $14,000; that in a manner unknown to plaintiff but well known to defendants, and each of them,

said sum was derived from unencumbered property theretofore owned by said Hot Lake Sanatorium Company; that said sum was so received by said Hot Lake Springs Company with full knowledge and notice of the insolvency of the two other corporations and without consideration and with notice that they were going out of business; that about June 15, 1915, under and by virtue of the lease, there became due and owing from the Hot Lake Springs Company to said P. L. Willis the sum of $4,500 as rent; that at all the times mentioned in the complaint P. L. Willis was the duly qualified and acting trustee of the bondholders under said deed of trust, and acted at all times with the consent of the directors and the bondholders, and all of them knew—or in equity and good conscience ought to have known—the insolvent condition of the companies and all the facts recited in the complaint.

After other allegations along the same line, it is charged that the defendants by reason of the facts recited, have fraudulently converted the property described to their own use and the complaint prays, among other things, that the lien of plaintiff's judgment be established upon the $14,000 alleged to have been received by the Hot Lake Springs Company and that such lien be declared superior to all other liens, including that of the bondholders; that the lien so established be foreclosed and such of the assets be sold or accounted for and the proceeds applied to the satisfaction of plaintiff's judgment; that in case said judgment cannot be satisfied from said property that plaintiff have personal judgment for the amount thereof against each of the defendants. The complaint was put at issue by an answer and replies thereto, which are too lengthy to even summarize here, but it is sufficient to say that they are adequate to

justify the admission of all the testimony offered by either party. There was a decree for defendants and plaintiff appeals.                                  Affirmed.

For appellant there was a brief over the names of *Messrs. Cochran & Eberhard* and *Mr. R. G. E. Cornish,* with oral arguments by *Mr. George T. Cochran* and *Mr. Cornish.*

For respondents there was a brief over the names of *Messrs. Crawford & Eakin, Mr. Arthur C. Spencer, Mr. W. A. Robbins, Messrs. Giltner & Sewall* and *Mr. Guy Willis,* with oral arguments by *Mr. Thomas H. Crawford* and *Mr. Robbins.*

McBRIDE, C. J.—1, 2. One of the principal questions arising upon this appeal relates to the effect of the following clause in the trust deed, which purports to convey all real and personal property then owned by the grantor and "all other real estate or right to purchase real estate, franchises, easements, appurtenances, privileges and interests which are now owned by the Hot Lake Sanatorium Company, or which it may hereafter acquire during the life of this instrument." This language is plain and there is absolutely no room for doubt as to the intent of it. It is conceded that the property mortgaged was worth about $150,000 and the Hot Lake Sanatorium Company had at the time an option to purchase tract No. 4, upon which it had already made several payments and which purchase was afterwards completed at a total expense of $25,000, so that the present security for the bonds at the time of their issue was largely below the value of the property pledged, and the ultimate redemption of the bonds depended upon the expenditure of the money received for them and the industry of the company by offering

88 Or.—19

sufficient attractions to induce the general public to patronize the resort.

As disclosed by the testimony of Mr. W. M. Pierce there was situated upon tract No. 4 an artesian well which furnished water higher in temperature than that upon tract No. 1, and it was among the designs of the company in the course of its contemplated improvements to utilize this hot water to furnish a greenhouse and winter garden for the resort. Added to this was a possibility that if the property got into other hands the hot spring upon it might be utilized for the purpose of another resort of a similar character to the one then conducted by the defendant corporation. It is needless to say that such a contingency would have had a tendency to depreciate the value and income of the resort of the grantees in the trust deed and render the security of the bondholders less valuable. Under the circumstances as they then appeared the purchase of this tract would seem both necessary and convenient for the successful prosecution of the business into which the bondholders were putting a quarter of a million dollars.

As to parcel No. 2, the testimony is that it was purchased with a view to using it as a pasture and place to raise feed and butcher livestock with which to supply fresh meat for the sanatorium; and that parcel No. 3 was purchased to secure a supply of firewood for the operation of the kitchen and laundry, and was also of value for stock pasture. It was evidently hoped and expected by the promoters of the scheme that an extensive health resort would be established, such as exists at Hot Springs, Arkansas, or at Boise, Idaho, but alas for the vanity of human expectations; neither the money expended, the heat of the water, nor the expenditure of air of a like temperature in

advertising, induced the public to patronize the resort; but this does not detract from the fact that as the matter then appeared to the defendants these expenditures were reasonably necessary to the convenient and successful operation of the sanatorium, and the status of the property is fixed by what then appeared convenient and necessary and not by the results of the enterprise.

It was evidently the intent of the parties to the trust deed that all after-acquired property should be subject to the lien created thereby, and we find nothing in the evidence indicating that the purchase was so far removed from the general objects of the corporation as to render it impossible for it to take and hold it. Many cases are cited by counsel wherein it has been held that after-acquired property does not become subject to the lien of a mortgage which in general terms provides that it shall be a lien on after-acquired property, but in these cases the intent of the parties is considered and each depends upon special circumstances not present in the case at bar.

The industry of counsel for plaintiff has brought before us a large number of such cases and for the convenience of the profession we cite them: *Calhoun* v. *Memphis & P. R. Co.*, 2 Flipp. 442 (Fed. Cas. No. 2309); *Humphreys* v. *McKissock*, 140 U. S. 304 (35 L. Ed. 473, 11 Sup. Ct. Rep. 779); *Smith* v. *McCullough*, 104 U. S. 25 (26 L. Ed. 637); *New Orleans Pac. R. Co.* v. *Parker*, 143 U. S. 42 (36 L. Ed. 66, 12 Sup. Ct. Rep. 364); *Parish* v. *Wheeler*, 22 N. Y. 494; *Boston etc. R. Co.* v. *Coffin*, 50 Conn. 150; *Mississippi Valley Co.* v. *Chicago etc. R. Co.*, 58 Miss. 846; *Meyer* v. *Johnston*, 53 Ala. 237, 64 Ala. 603; *Pardee* v. *Aldredge*, 189 U. S. 429 (47 L. Ed. 883, 23 Sup. Ct. Rep. 514); *Guaranty Trust Co.* v. *Atlantic Coast Co.*, 132 Fed. 68;

*Mallory* v. *Maryland Glass Co.,* 131 Fed. 111; *Maxwell* v. *Wilmington Dental Mfg. Co.,* 77 Fed. 938; *Calhoun* v. *Paducah Ry. Co.,* 9 Cent. L. J. 66; *Brainerd* v. *Peck,* 34 Vt. 496; *Seymour* v. *Canandaigua etc. R. Co.,* 25 Barb. (N. Y.) 284; *Eldridge* v. *Smith,* 34 Vt. 484; *Dinsmore* v. *Racine etc. R. Co.,* 12 Wis. (649) 725; *Walsh* v. *Barton,* 24 Ohio St. 28.

The effect of these cases may well be summed up in the language of Mr. Justice HARLAN in *Smith* v. *McCullough,* 104 U. S. 25, 27 (26 L. Ed. 637):

"That question is within a very narrow compass. It must be solved so as to give effect to the intention of the parties, to be collected as well from the words of the instrument as from the circumstances attending its execution."

Jones on Mortgages (3 ed.), Section 153, states the rule as follows:

"The chief question therefore is, whether the parties to the mortgage intended that the after-acquired property, which is in any case the subject of litigation, should be subject to the lien of the mortgage; and it will be noticed that in the recent cases the contention is generally upon this question."

See, also, *Central Trust Co.* v. *Kneeland,* 138 U. S. 414 (34 L. Ed. 1014, 11 Sup. Ct. Rep. 357); *Toledo D. & B. R. Co.* v. *Hamilton,* 134 U. S. 296 (33 L. Ed. 905, 10 Sup. Ct. Rep. 546); *Hickson Lbr. Co.* v. *Gay Lbr. Co.,* 150 N. C. 282 (63 S. E. 1045, 21 L. R. A. (N. S.) 843); *Mitchell* v. *Winslow,* 2 Story, 630 (Fed. Cas. No. 9673); *Maxwell* v. *Wilmington Dental Mfg. Co.,* 77 Fed. 938.

We conclude, therefore, that all the property mentioned in the complaint became subject to the lien created by the trust deed and that such lien was superior to any lien created by plaintiff's judgment.

The transfer of the property to the new corporation does not inure in any way to the benefit of plaintiff. It is conceded that the value of the property is less than the amount due upon the bonds. The Hot Lake Home and Sanatorium Company took the property subject to the indebtedness and was bound to discharge it. There is nothing in the evidence that indicates any intention on the part of anyone to defraud creditors by means of the transfer and nothing is disclosed which indicates that plaintiff was thereby placed in a more disadvantageous position relative to collecting its debt. When plaintiff allowed the Hot Lake Sanatorium Company to contract the debt which is the basis of its present judgment the record of the trust deed was notice to it that all of the property, present and prospective, of the Hot Lake Sanatorium Company was pledged for the payment of the outstanding bonds. No unpledged property was conveyed to the new company and none existed.

3, 4. Another question is raised as to the status of the $14,000 received from the sale of tracts 2, 3 and 4. It appears from the testimony that the effort to build up a profitable watering place upon the premises was unsuccessful. In 1912 the Hot Lake Sanatorium Company had defaulted in the payment of interest on its bonds and was indebted in considerable amounts to unsecured creditors, and a plan was devised to sell the property to the Loyal Order of Moose as a home for the purposes of said organization. To facilitate this the Hot Lake Home and Sanatorium Company was organized and stock in this company issued to the stockholders in the old company, in consideration of which the latter company—the bondholders consenting—transferred the property of the old company to the new company. The old company subscribed for one

half of the stock of the new company and the plan which is not clearly detailed in the evidence, seems to have been to sell a majority of the stock to the various Moose lodges so they would control the property. Subscriptions to the amount of some $6,000 in cash, and other amounts not paid, were made but all with the understanding that they were merely tentative and not to be effective unless the lodges generally agreed to the arrangement. Some of the larger lodges not agreeing the plan fell through and the money, which had never been turned into the company treasury, was returned to the lodges by W. M. Pierce and others who had the custody of it. Failing in this plan W. M. Pierce who was the principal promoter and large stockholder in the Hot Lake resort project, suggested to some of the creditors including plaintiff, that the only way to save the company from impending bankruptcy and the unsecured creditors from consequent loss of their debts, was to interest the Oregon-Washington R. & N. Company, a branch of the Union Pacific Railroad Company, in the operation of the property. In pursuance of this plan and with the consent and assistance of plaintiff, W. M. Pierce took the matter up with Mr. J. D. Farrell, president of the Oregon-Washington R. & N. Co., with the result that a corporation called the Hot Lake Springs Company was formed under the auspices of the Oregon-Washington R. & N. Co., with Mr. J. P. O'Brien of the latter company as president, to take over and manage the property under a lease executed June 10, 1913, wherein the Hot Lake Home and Sanatorium Company were parties of the first part; the Hot Lake Springs Company, parties of the second part; the Hot Lake Sanatorium Company, P. L. Willis, trustee for the bondholders, and Walter M. Pierce parties of the third,

fourth and fifth parts, respectively, wherein parcel No. 1, together with all the buildings and personal property was leased to the party of the second part for a term of two years. In consideration of said party paying to P. L. Willis, trustee for the bondholders, the interest on the $250,000 of bonds outstanding, which amounted to the sum of $15,000. The buildings and equipment of the property having deteriorated and being out of repair, a rehabilitation thereof having become necessary, and it being apparent that the Hot Lake Home and Sanatorium Company had not the means of raising it without disposing of some of the property not immediately and urgently necessary for the present operation of the sanatorium, it was stipulated that tracts 2, 3 and 4 should be sold and out of the proceeds derived from such sale $14,000 be paid to the lessee as a rehabilitation fund for the purposes above indicated. There were mortgages upon the properties amounting to $5,000 and after considerable effort the properties were sold subject to these mortgages, the purchasers assuming the same, which brought the purchase price up to $19,000. And the testimony indicates that this was the fair market value of the property. Of the sum of $14,000 paid over to the Hot Lake Springs Company as a rehabilitation fund, $11,834.23 was actually expended during the first two years of the lease for the purposes indicated therein, leaving in its hands at the end of the term the sum of $2,165.65 unexpended. At the expiration of the term the lease was renewed under practically the same conditions as the original with the stipulation that the lessee might retain this unexpended balance as a betterment and repair fund, and any unexpended balance left of the fund was to be paid over to the trustee of the bondholders. The money was not so

expended and one of the contentions of the plaintiff here is that it is entitled to have this sum applied upon its judgment. We see no equity in this contention. The land from the sale of which it was realized was subject to the lien of the bondholders' mortgage. The plaintiff had no lien by judgment or otherwise upon the land or the proceeds of it, either at the time of the original lease or of the second lease. Under the circumstances the bondholders were first in time and had an equity equal or rather superior to the plaintiff, arising from the fact that they had consented to a sale of the property under circumstances which gave them at least an equitable lien upon the proceeds, subject only to the right of the lessee to expend such sums as might be necessary in repairs and betterments. This reasoning applies to the whole $14,000 received for the property. Nothing that was done in respect to the sale of these tracts put plaintiff in any worse position than it was before they were sold. They were subject to the lien of the bondholders' mortgage and the evidence indicated that the value of all the property subject to such lien was far short of the par value of the bonds. The loan was evidently made upon a speculative basis and was dependent for its repayment to a considerable extent upon the financial success of the sanatorium, which seems to have been a failure from the beginning until the present.

There is some question raised as to the adequacy of the consideration paid for tracts 2, 3 and 4, but the evidence indicates that they brought their full market value and that they were conveyed in good faith with the sole purpose of complying with the requirement of the Hot Lake Springs Company that a rehabilitation fund should be raised as a condition precedent to its taking a lease of the property. The making of

this arrangement seemed at the time the only hope of the unsecured creditors. The institution was in default of interest on the bonds for the payment of which all its property was pledged, and an inevitable foreclosure that would necessarily absorb all the assets was imminent. Such foreclosure would probably have meant a partial loss to the bondholders and a total loss to the unsecured creditors. In this condition of affairs fraud or bad faith cannot be imputed to Pierce or the other parties to the lease, on account of their taking a course which appeared to offer some hope of infusing new life into a failing venture and possibly rendering it ultimately profitable. The leasing proposition was the proverbial "last straw" and the parties interested grasped at it. That it proved unavailable does not prove or tend to prove want of good faith on the part of the parties executing it. The stipulation in the renewal lease in regard to the unexpended balance of the rehabilitation fund seems fair. To help the project along the bondholders had consented that a portion of their already inadequate security might be disposed of. It was only fair that the unexpended proceeds of the security disposed of should take the place of the original security. This result would seem equitable even in the absence of the agreement to that effect, from the terms of the trust deed.

5. There is nothing in the circumstance that the defendant made the lease to the Hot Lake Springs Company, which indicates an intent to defraud any creditor of the Hot Lake Sanatorium Company or the Hot Lake Home and Sanatorium Company. The lease was the last experiment that remained to be tried to prevent a foreclosure and sale of the property, which would have left the secured creditors only partially

paid and the unsecured creditors without hope of receiving anything whatever. The scheme was founded on the not wholly unreasonable theory that a company organized under the auspices of a great corporation like the Oregon-Washington R. & N. Co., might be able to attract tourists and others to the sanatorium. The railroad company would naturally be benefited by increased tourist travel over its lines, and could advertise the resort more widely than the Sanatorium Company in its embarrassed and crippled condition would be able to do. Nobody objected to the plan until it was found that it did not work out successfully when tried. As before remarked, no creditor is in any worse position by reason of the lease and, therefore, no creditor can complain because of it.

6. Much space has been devoted to a discussion of the doctrine that the assets of an insolvent corporation constitute a trust fund in the hands of its officers for the payment of its indebtedness. This, as a general proposition is true, but such a trust does not throw secured and unsecured indebtedness into hotchpot to be satisfied regardless of priorities, but on the contrary equity will apply the assets first to the payment of secured debts, which were a lien upon the property and second to unsecured debts *pro rata*. It is conceded and fully established that the debt secured by the bondholders' mortgage will absorb the property and, as previously indicated, it is a prior lien upon all; there is no other property upon which a trust can be fastened, and there is not the slightest evidence that any of the officers of the original Sanatorium Company made any of the conveyances in bad faith, or for an inadequate consideration, or for any purpose other than to keep the institution on its feet and try to make it a success. Walter M. Pierce, the pro-

jector of the institution, testifies that he has sunk
about $200,000 in it, and the bondholders stand to lose
a large part of the money they have invested.  It is
useless to speculate upon the cause of the failure.  It
may be that the management was not the best or it
may be that the project was inherently unsound, as
many plausible ventures prove to be when given the
acid test of actual experience.  That the scheme so
far has been a failure and that everybody who has
put money into it has been a loser is evident from this
record, but we find nothing in the facts or the law that
would justify us in setting aside existing priorities or
holding that there have been any such fraudulent prac-
tices as will justify a decree for plaintiff.

The decree of the Circuit Court is affirmed.

AFFIRMED.  MOTION TO RETAX COSTS OVERRULED.