## ST. LOUIS–SAN FRANCISCO RY. CO. v. McCORNACK et al.

### No. 1319.

District Court, W. D. Oklahoma.

May 25, 1940.

Cruce, Satterfield & Grigsby, of Oklahoma City, Okl., for plaintiff.

E. E. Blake, of Oklahoma City, Okl., for James M. and Elizabeth J. McCornack.

Hayes, Richardson, Shartel & Gilliland, of Oklahoma City, Okl., for Terminal Land Co.

Vernon E. Cook, of Oklahoma City, Okl., for Oklahoma Traders, Inc.

J. B. Dudley, of Oklahoma City, Okl., for Mid-Texas Co.

VAUGHT, District Judge.

This action was originally brought by the St. Louis-San Francisco Railway Company, a corporation, as plaintiff against James M.

McCornack, et al., to quiet title to certain lands acquired by the railway company in Oklahoma City, Oklahoma.

On February 7, 1936, a decree was entered in this action disposing of all the issues except the controversy between the plaintiff and the defendants, Terminal Land Company, Argo Royalty Company, S. R. Cohagan, James Owens, and Oklahoma Traders, Inc., said controversy involving a portion of Parcel No. 3 lying between the south line of Frisco Avenue extended east through the northwest quarter, section 3, township 11 north, range 3 west and the southwest quarter section line of said quarter section.

The facts in this case have been stipulated.

On March 3, 1902, James M. McCornack, who was the patentee of the northwest quarter, section 3, township 11 north, range 3 west, Oklahoma County, Oklahoma, for a recited consideration executed and delivered to the St. Louis & San Francisco Railroad Company a conveyance to a strip of land fifty feet wide through said northwest quarter of section 3, said conveyance reciting that said land was to be used for a right of way for said railroad company.

The conveyance above described was signed by James M. McCornack only, and in June, 1909, Elizabeth J. McCornack, the wife of James McCornack, instituted an action in the District Court of Oklahoma County attacking said conveyance on the ground that the land conveyed was a portion of her homestead and that she had not signed the deed. A settlement was reached, however, between the railroad company and James M. McCornack and his wife, Elizabeth J. McCornack, whereby on the 5th of June, 1909, the said James M. McCornack and Elizabeth J. McCornack, for a cash consideration of $250 executed a warranty deed to the land in controversy, which deed was filed for record on the 15th day of June, 1909.

Soon after the delivery of the deed of the 5th of June, 1909, James M. McCornack and others entered into an agreement with the St. Louis & San Francisco Railroad Company whereby in consideration of the removal of the tracks of the St. Louis & San Francisco Railroad from a portion of the property covered by the deed of June 5, 1909 and reconveyance of a portion of said property covered by the deed of June 5, 1909, to James M. McCornack and wife,

the said James M. McCornack and Elizabeth J. McCornack executed to the St. Louis & San Francisco Railroad Company a warranty deed, delivered and signed the 16th day of July, 1909, and recorded in Book 122, Deeds, page 51 on the records of the County Clerk of Oklahoma County, Oklahoma, on August 8, 1910. The deed of July 16, 1909, conveyed fee simple title to the railroad company to Parcel No. 3 as set out in the petition.

Within the following year, the railroad company constructed its railroad tracks on said land, which land has been and is now being used for railroad purposes.

On June 20, 1901, a certain bond issue was made by said railroad company to secure refunding bonds in the sum of $68,557,000 and a mortgage to secure said bonds given to cover all of its properties wherever situated and covering all "after-acquired property."

On August 27, 1907, the railroad company executed a second mortgage to secure its outstanding bonds in the sum of $69,384,000, covering all property belonging to said railroad company and all "after-acquired property." Said mortgages above described were duly filed with the Secretary of State of Oklahoma and in the office of the Register of Deeds of Oklahoma County.

On May 27, 1913, the mortgage holders filed a bill of complaint in the United States District Court for the Eastern District of Missouri, praying for the foreclosure of the first mortgage and for the appointment of receivers for all of the properties of said railroad company. On the same date an order was entered by said court appointing receivers for said railroad company and said receivers immediately took charge of the properties of said railroad company, including the property situated in Oklahoma County hereinabove described.

On June 2, 1913, ancillary proceedings were filed in the United States District Court for the Western District of Oklahoma and the same receivers were appointed by said court.

On June 9, 1914, the trustee under the second mortgage filed suit in the United States District Court for the Eastern District of Missouri to foreclose said mortgage. Thereafter, the suits pending in the United States District Court for the Eastern District of Missouri were consolidated.

On October 1, 1912, James M. McCornack and Elizabeth J. McCornack executed a real estate mortgage to Fred W. Fleming of Kansas City, Missouri, and the right of way land hereinbefore described was included in said mortgage. In June, 1914, Fleming filed suit in the District Court of Oklahoma County to foreclose said mortgage and the railroad company was made a party defendant but the receivers were not named as defendants. In the petition filed in the District Court of Oklahoma County, the plaintiff stated: "The defendant, St. Louis & San Francisco Railway Company, claims some right, title, equity or interest in said real estate, or a part thereof, by reason of a purported agreement which appears to have been filed for record in the office of the Register of Deeds of Oklahoma County, Oklahoma, on the 8th day of February, 1913, at 8:00 o'clock A.M., and recorded in Book 13, page 618 thereof, and is made a party defendant herein for the purpose of permitting and requiring it to come in to court and setting up and asserting what right, equity, or interest it has or claims to have in and to any part of said land covered by said mortgage."

It is agreed that the St. Louis & San Francisco Railroad Company was the grantee in the McCornack deed to the land in controversy and that the title in the property was in the said railroad company until the purchase of same at the receiver's sale by the St. Louis-San Francisco Railway Company on July 19, 1916.

The parties agree in the stipulation that the contract referred to in the Fleming petition was an agreement for the execution of a lease by the McCornacks to the railroad company for certain lands for a period of five years from the 21st of October, 1912, for the use of the said railroad company as stock pens, and that the lands covered by this contract did not include the lands involved in this suit.

The railroad company filed an answer in which it in effect disclaimed any interest in the land covered by the contract referred to in the plaintiff's petition.

As stated, the receivers of the railroad company were never made parties to the suit in the state court and no leave of federal court was sought to make said receivers parties defendant.

Judgment was had in said state court on January 25, 1915; a sale was had on August 7, 1915, and confirmed on October 9, 1915.

On March 31, 1916, a final decree was entered in the United States District Court for the Eastern District of Missouri in the consolidated cases, directing the sale of the railroad property, and on July 19, 1916, a sale of all of the property of said railroad company was made to the St. Louis-San Francisco Railway Company, a new corporation, and on August 29, 1916, the sale was confirmed.

The parties themselves cannot explain satisfactorily why the judgment in the District Court of Oklahoma County included the foreclosure of the right of way land hereinbefore described.

The mortgages executed by the railroad company to secure the bonds hereinbefore described contained the following description of the property:

"All telegraph and telephone lines, including poles, wires, batteries and other appurtenances, telegraph instruments, telephone and other instruments; all rights of way, station, depot and terminal grounds, and all other lands and interests in lands; all tunnels, roadbeds, sidings, turnouts, switches and turn-tables, superstructures, bridges, stringers, ties, rails and frogs, chairs, bolts, splices and other railroad appurtenances; all station houses, depots, warehouses, engine-houses, car houses, water stations, machine shops, office buildings and other structures; all engines, tenders, cars and other rolling stock and equipment; all furniture, machinery, tools and implements; all materials and supplies; all leases, operating, trackage and traffic agreements, policies of insurance, and contracts; and all other property, real, personal and mixed, appurtenant to any of the railroads and property at any time subject to lien of this indenture and whether any of the foregoing property is now owned by the Railroad Company or shall be hereafter at any time acquired by it.

"All franchises, rights, privileges, immunities and exemptions of the Railroad Company in respect of the railroads at any time subject to the lien of this indenture, and whether now owned by it or which it may hereafter acquire."

And as stated above, said mortgages were recorded as provided by the laws of the state of Oklahoma.

In the sale in the District Court of Oklahoma County, the lands covered by the

Fred W. Fleming mortgage were purchased by J. H. Everest. Thereafter, said J. H. Everest, joined by his wife, conveyed the property covered by the sheriff's deed to one Joseph B. Reynolds, and thereafter, Reynolds and his wife conveyed by warranty deed to Fred W. Fleming.

On February 21, 1930, the sole heirs of the estate of Fred W. Fleming, deceased, conveyed the said property to the Terminal Oil Mill Company by quitclaim deed. Thereafter, on the 21st of February, 1930, by quitclaim deed the same heirs conveyed the same property covered by the sheriff's deed to the Terminal Land Company, and on October 21, 1931, the said Terminal Land Company executed to the Oklahoma Traders, Inc., its certain oil and gas lease covering the property involved in this controversy. Oklahoma Traders, Inc., also had leases on adjoining property and that property was developed for oil and gas purposes.

There is no controversy whatever over the description of the land involved in this suit. The defendants, however, contend that the proceedings in the District Court of Oklahoma County resulted in a final judgment and sale and that whatever interest the railroad company had in said property, outside of the right to use said property for railroad purposes, was extinguished by the judgment and sale in Oklahoma County.

The plaintiff contends that at the time the suit was filed in Oklahoma County, all of the property involved in this litigation was in the hands of the receivers appointed by the Federal Courts for the Eastern District of Missouri and for the Western District of Oklahoma; that said receivers were never made parties to said suit and no leave was ever granted by the Federal Court for the Eastern District of Missouri or for the Western District of Oklahoma to make said receivers parties, therefore, the receivers had no notice of the pendency of this action in the state court; that at the time McCornack and his wife executed the mortgage to Fleming, the railroad company was the owner of the fee simple title to said right of way property and that McCornack and his wife had no interest of any nature or character in said property; and that in the suit filed in the state court in Oklahoma County it was not alleged that the railroad company did not own this right of way, but that this particular land was included in the mortgage to Fleming through inadvertence since it was within the boundaries of the forty acres described in said mortgage, and

the only reason stated for making the railroad company a party was to determine its interest in a small parcel of land involved in an entirely different contract, as hereinbefore set out, all of which had been settled and the railroad company claimed no interest in the land covered by said contract.

The general rule is stated in 41 Corpus Juris 372: "The mortgagor must, in general, have a present valid title to the estate to be encumbered or to that interest or share therein which the mortgage purports to convey. If the mortgagor has no title at all to the property, as where the title which he asserts is not merely defeasible but is absolutely void, his mortgage creates no interest in the premises, * * *."

In Miller v. Williams, 144 Ky. 37, 137 S. W. 779, the Supreme Court of Kentucky held, quoting from the syllabus: "Where a mortgagor had previously disposed of certain property, his subsequent execution of a mortgage, the description of which included the land disposed of, does not create a lien upon it."

And in the body of the opinion the court said: "If the description in the mortgage includes the land conveyed by Hendrickson to Elizabeth Hendrickson, it could not, of course, have created a lien upon it."

The record discloses that at the time Fleming filed suit to foreclose his mortgage in the state court, the receivers appointed in the foreclosure proceedings in the Federal Courts had been in actual possession of the land in controversy for more than one year. What court then had jurisdiction of the property?

In an old case, Wiswall v. Sampson, 14 How. 52, 65, 55 U.S. 52, 14 L.Ed. 322, the Supreme Court of the United States passed upon this very question and said:

"When a receiver has been appointed, his possession is that of the court, and any attempt to disturb it, without the leave of the court first obtained, will be a contempt on the part of the person making it.

*    *    *    *    *    *

"The settled rule, also, appears to be, that where the subject-matter of the suit in equity is real estate, and which is taken into the possession of the court pending the litigation, by the appointment of a receiver, or by sequestration, the title is bound from the filing of the bill; and any purchaser, pendente lite, even if for a valuable consideration, comes in at his peril.

*    *    *    *    *    *

"But it is not necessary to go this length in the case before us, as it is sufficient to say, that the sale under the judgment, pending in the equity suit, and while the court was in possession of the estate without the leave of the court, was illegal and void.

\* \* \* \* \* \*

"As we have already said, it is sufficient, for the disposition of this case, to hold, that while the estate is in the custody of the court, as a fund to abide the result of a suit pending, no sale of the property can take place either on execution or otherwise, without the leave of the court for that purpose. And upon this ground, we hold that the sale by the marshal on the two judgments was illegal and void, and passed no title to the purchaser."

In Heidritter v. Elizabeth Oil-Cloth Co., 112 U.S. 294, 5 S.Ct. 135, 139, 28 L.Ed. 729, the Supreme Court affirmed the principle stated in the Wiswall case, supra, and said: "The principle applied in Wiswall v. Sampson, ubi supra, must be regarded as firmly established in the decisions of this court."

In Adams v. Mercantile Trust Co. et al., 66 F. 617, 620, the Fifth Circuit Court of Appeals said, quoting from an opinion by Mr. Justice Bradley in the case of Wilmer v. Railway Co., Fed.Cas.No.17,775, 2 Woods 409, 427: " 'The test, I think, is this: Not which action was first commenced, nor which cause of action had priority or superiority, but which court first acquired jurisdiction over the property. If the Fulton county court had the power to take possession when it did so, and did not invade the possession or jurisdiction of this court, its possession will not be interfered with by this court. The parties must either go to that court, and pray for the removal of its hand, or, having procured an adjudication of their rights in this court, must wait until the action of that court has been brought to a close, and judicial possession has ceased. Service of process gives jurisdiction over the person. Seizure gives jurisdiction over the property, and, until it is seized, no matter when the suit was commenced, the court does not have jurisdiction.' "

In Campau et al. v. Detroit Driving Club, 130 Mich. 417, 90 N.W. 49, the Supreme Court of Michigan held, quoting from the syllabus: "An execution sale of property in possession of a receiver, without leave of court and without application being made, is a contempt of the court, and will be set aside." And quoting from the opinion, the court said: "We think counsel for the inter-vening petitioners is correct in saying that the execution sale made after the receiver was appointed was made in contempt of the court, and is illegal and void. This rule was unanimously held by the supreme court of the United States in Wiswall v. Sampson, 14 How. 52, 14 L.Ed. 322."

In Walling v. Miller, 108 N.Y. 173, 15 N.E. 65, 2 Am.St.Rep. 400, the New York Court of Appeals of New York held: "Where a receiver of personal property has gone into possession, a sale of such property without leave of the court appointing the receiver, by the sheriff, under an execution levied two days before the decree of a receiver, is void, and the purchaser thereat takes no title, as against the receiver or a subsequent purchaser from him at a legal sale."

In Wabash Railroad Co. v. Adelbert College of the Western Reserve University, 208 U.S. 38, 54, 28 S.Ct. 182, 187, 52 L.Ed. 379, the Supreme Court of the United States said: "When a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The latter courts, though of concurrent jurisdiction, are without power to render any judgment which invades or disturbs the possession of the property while it is in the custody of the court which has seized it."

In Starr et al. v. Chicago, R. I. & P. Ry. Co. et al., C.C., 110 F. 3, 9, Circuit Judge Sanborn, speaking for the court, said: "The court of appeals has frequently required the federal courts of this circuit to stay their hands and to hold their suits in abeyance until the final determination by the state courts of issues of which those courts first acquired jurisdiction. \* \* \* If the state courts had first taken jurisdiction of the issues involved in this suit, we should have gladly followed the foregoing decision, but the rule applies where the federal court first takes jurisdiction as well as where jurisdiction is first acquired by the state court. The enforcement of this rule, that the court which first takes jurisdiction must retain and exercise it to the exclusion of all proceedings in other courts until its jurisdiction is exhausted by the final judgment or decree, and by its effective execution, is indispensable to prevent unseemly conflicts between courts and their officers, and 'confusion worse confounded.' "

In Ryan v. Donley et al., 69 Neb. 623, 96 N.W. 234, 236, the Supreme Court of Ne-

braska said: "It is a rule well known to the profession that, where two courts have concurrent jurisdiction, that which first takes cognizance of the case has the right to retain it to the exclusion of the other; that, where property is in gremio legis, if it be a court of rightful jurisdiction, no other court can interfere and wrest from it the jurisdiction first obtained; and that a sale, under an order of one court, of property in the custody or possession of another, conveys no title."

The same principle is also approved in Forest Lake Cemetery of Prince George's County v. Baker, 113 Md. 529, 77 A. 853.

■ A well reasoned case from the Circuit Court of Appeals, Eighth Circuit, in my judgment directly in point, is Swift v. Black Panther Oil & Gas Co., 244 F. 20, 23. In the opinion by Circuit Judge Sanborn that court said, after referring to a long line of decisions from the Eighth Circuit:

"In Lang v. Choctaw, Oklahoma & Gulf R. Co. [8 Cir.], 160 F. [355], 359, 360, 87 C.C.A. [307] 311, 312, the rule was thus stated by this court:

" 'The court which first acquires jurisdiction of specific property by the lawful seizure thereof, or by the due commencement of a suit in that court, from which it appears that it is, or will become, necessary to a complete determination of the controversy involved, or to the enforcement of the judgment or decree therein, to seize, charge with a lien, sell, or exercise other like dominion over it, thereby withdraws that property from the jurisdiction of every other court and entitles the former to retain the control of it requisite to effectuate its judgment or decree in the suit free from the interference of every other tribunal.' "

■ The receivers in the Federal Court were not made parties to the suit in the state court and service upon the railroad company or even an appearance of the attorneys for the railroad company was not service upon or an appearance for the receivers. The Supreme Court of the United States upheld this rule in Pendleton v. Russell, 144 U.S. 640, 12 S.Ct. 743, 36 L.Ed. 574, in an opinion by Mr. Justice Field.

The mortgages which had been given by the railroad company particularly described the line of railroad which included the property in Oklahoma City as Central Division and the full description was given as: "The railroad known as the Central Division, extending from Seneca, on the boundary line between the State of Missouri and the Indian Territory, in a general southwesterly direction through Sapulpa to Oklahoma City in the Territory of Oklahoma, being about two hundred and fifteen and thirty-one one-hundredths (215.31) miles in length." And as stated herein, each of the mortgages which was being foreclosed in the Federal Court, after describing the property then owned by the railroad company, specifically stated: " * * * ; and also any and all the rights, privileges, franchises, properties, real or personal, rights and things, which the Railroad Company possessed at the time of the execution and delivery of the General Lien Mortgage or which it thereafter has become entitled to possess, for the purposes of, or in connection with, such lines of railway or any such extension, branch, telegraph and telephone lines."

In the case of Minnesota Loan & Trust Co. v. Peteler Car Co. et al., 132 Minn. 277, 156 N.W. 255, 256, the Supreme Court of Minnesota said: "In equity, though not at law, a mortgage of after-acquired property, apt words being used to express the intent of the parties, is effective."

The opinion continued with a general discussion of the status of after-acquired property and said: "It was used to carry on the business for which the company was organized. The language of the deed is sufficient, within the cases, to cover after-acquired property and the character of the Como property is such as properly to be included in it. The plaintiff's mortgage is between the parties a lien upon the Como property." See, also, Wilson v. Ward Lumber Co., C.C., 67 F. 674; Guaranty Trust Co. of New York v. Minneapolis & St. L. R. Co. et al., D.C., 33 F.2d 512, 519, in which latter case Circuit Judge Booth, in discussing the use of the word "appurtenances" as used in a mortgage including after-acquired property clauses, said: "More properly the word 'appurtenance,' when used in connection with a line of railway, is used to describe something akin to the line of railway; e. g., a spur, a siding, a switchyard, a branch, an extension."

In Cleveland Trust Co. v. Consolidated Gas, Electric Light & Power Co. of Baltimore et al., 55 F.2d 211, the Circuit Court of Appeals, Fourth Circuit, held: "Railroad's mortgage held not intended to cover after-acquired property other than that used in connection with railroad and its operation."

In Central Trust Co. v. Kneeland, 138 U.S. 414, 419, 11 S.Ct. 357, 358, 34 L.Ed. 1014, the Supreme Court of the United

States, speaking through Mr. Justice Brewer, said: "The first mortgage had the 'after-acquired property' clause in it. It is settled that such a clause is valid, and that thereby the mortgage covers not only property then owned by the railroad company, but becomes a lien upon all property subsequently acquired by it which comes within the description in the mortgage."

The same rule is supported in Wade v. Chicago, Springfield & St. Louis Railroad Co., 149 U.S. 327, 341, 13 S.Ct. 892, 898, 37 L.Ed. 755, in which the court said: "The 'after-acquired clause' in the mortgage of the Chicago, Springfield & St. Louis Railroad Company, under the decisions of this court, covers all acquisitions made to that property by either the construction company, or others acquiring rights under it."

In Pardee v. Aldridge, 189 U.S. 429, 23 S.Ct. 514, 47 L.Ed. 883, the Supreme Court lays down the rule as to the validity or invalidity of mortgages on after-acquired property and it there held:

"Where a railroad company mortgages its road including all appurtenances and appendages of said railroad, and the property of said company now acquired, or which may be acquired, used for and pertaining to the operation of said railroad, a sale under such mortgage does not include property acquired by the company after the mortgage for the purpose of subdivision and sale; and it is a question for a jury to determine, whether the land so purchased was to be used for and pertaining to the operation of the railroad or not.

"A suit to foreclose a mortgage is not a proceeding in rem which will bind persons who are not parties thereto, and the fact that the decree covered the property in question does not conclude strangers to the suit."

See, also, Dunham v. C., P. & C. Ry. Co., 1 Wall. 254, 68 U.S. 254, 17 L.Ed. 584; Keokuk & Western Railroad Co. v. Missouri, 152 U.S. 301, 14 S.Ct. 592, 38 L.Ed. 450; Tippett & Wood v. Barham, 4 Cir., 180 F. 76, 37 L.R.A.,N.S., 119; Grand Forks National Bank v. Minneapolis & N. Elevator Co., 6 Dak. 357, 43 N.W. 806; and Clarke-Woodward Drug Co. v. Hot Lake Sanitorium Co. et al., 88 Or. 284, 169 P. 796.

The same rule is recognized by the Supreme Court of Oklahoma in Oklahoma State Bank of Wapanucka v. Burnett et al., 65 Okl. 74, 162 P. 1124, 4 A.L.R. 430.

In 38 C.J. 53, Section 89, it is said: "The lis pendens of a suit pending in a federal court extends to the property involved in the suit which is within the jurisdiction of the court." See, also, Gypsy Oil Co. v. Cover et al., 78 Okl. 158, 189 P. 540, 11 A.L.R. 129, and Zorn v. Van Buskirk, et al., 111 Okl. 211, 239 P. 151.

The court finds that the description of the lands, occupied by the plaintiff company as right of way which are in controversy in this suit, was included in the mortgage to Fleming, in the petition filed by Fleming in the state court, and in the judgment of the foreclosure, through inadvertence, and that it was not the intention of the parties themselves to include said right of way property in the Fleming foreclosure.

No effort was ever made by Fleming or his assignees to exercise any control, ownership or interest in said real estate.

The court finds that, since the receivers appointed by the Federal Court, both in the Eastern District of Missouri and the Western District of Oklahoma, had actually been in possession of this property and had been operating it for more than a year prior to the filing of the suit in the state court, and since said receivers were never made parties to the suit in the state court, no service was had upon them, and no leave of the Federal Court sought to make the receivers parties, said judgment, notwithstanding the railroad company was made a party defendant and its attorney approved the journal entry, is not binding upon this plaintiff.

The court furthermore finds that, since the McCornacks, at the time they executed the mortgage to Fleming, had no right, title or interest in the property involved in this suit, said mortgage was void insofar as this property is concerned and that the purchaser of said property at the sheriff's sale, and those holding under him by conveyance, assignment or lease, acquired no rights in this property prejudicial to the rights of this plaintiff.

The Federal Court at all times, since the filing of the suit up until the sale of this property to the plaintiff, was in possession of the property, had it in custody and under its control, and the plaintiff, therefore, having acquired its title through a receiver's sale in said Federal Court, its title is paramount and superior to any title claimed by the defendants or either of them.

Judgment will be rendered for the plaintiff. Findings of fact, conclusions of law, and a form of judgment consistent with this opinion may be submitted. An exception is allowed to the defendants and each of them.