In the Matter of the ESTATE of Bruce PRATHER, Deceased.

George B. ROSE et al., Appellants,

v.

Jewel KRAMES et al., Appellees.

No. 46552.

Court of Appeals of Oklahoma, Division No. 2.

June 4, 1974.

Rehearing Denied July 23, 1974.

Certiorari Denied Oct. 8, 1974.

Released for Publication by Order of Court of Appeals Oct. 10, 1974.

Garvin & Agee, Pauls Valley, for appellants.

W. D. Hart, Hart, Rennie & McClain, Pauls Valley, for appellees.

BACON, Judge.

In 1915 Bruce Prather married Florence L. Rose, who was a divorcee with three children. Bruce had no children and none were born of his marriage to Florence. In 1942 Bruce had a lawyer prepare his will[1] leaving his estate to Florence. In March of 1961 Florence died. Bruce died unmarried and without issue about eleven years later in April of 1972 without executing a new will or a codicil to the 1942 will. Bruce's brothers and sisters (appellees) filed an action for letters of administration and subsequently Florence's heirs (appellants) filed another action seeking to probate Bruce's will. The trial court consolidated the two actions and after hearings ultimately determined Bruce died testate, but since Florence, who was the sole beneficiary under the will, predeceased Bruce, the legacy lapsed and Bruce's estate would therefore pass to appellees under the laws of intestate succession. Appellants appeal from that finding arguing under two propositions of error.

Appellants' first proposition reads:

"The trial court erred in construing the words 'To Have and to Hold unto her and her heirs forever' as being words pertaining to the quality of the estate bequeathed to the designated beneficiary,

1. "STATE OF OKLAHOMA, COUNTY OF GARVIN. } ss

KNOW ALL MEN BY THESE PRESENTS: "That I, Bruce Prather, of R 2, Pauls Valley, Garvin County, Oklahoma, being of sound and disposing mind and memory but realizing the uncertainty of life do make, publish and declare this to be my last will and testament, and I hereby revoke, set aside and annul all former wills and testaments heretofore made, published or declared by me.
"It is my desire that all my just debts, including my funeral expenses be paid out of my estate by my executrix hereinafter named so soon after my death as may be convenient.
"First: I give, devise and bequeath unto my beloved wife, Florence L. Prather, all of my estate, real, personal or mixed, of whatsoever character, and wheresoever situated, of which I may die seized or possessed, or to which I may be entitled at the time of my death.
"To Have and to Hold unto her and her heirs forever.
"I hereby nominate and appoint my wife, Florence L. Prather, of Pauls Valley, Oklahoma, sole executrix of this my last will and testament, and direct that she be appointed executrix of this my last will and testament by the County Court having jurisdiction of the settlement of my estate without bond.
"In Witness Whereof, I, Bruce Prather, have to this my last will and testament, consisting of one sheet of paper, subscribed my name this 19th day of March, 1942, at Pauls Valley, Garvin County, Oklahoma.
"s/Bruce Prather
"The foregoing last will and testament of Bruce Prather, was signed, sealed, published and declared by the testator, the said Bruce Prather, as the last will and testament of him, the said Bruce Prather, in our presence, and in the presence of each of us, who at his request and in his presence and in the presence of each other sign our names hereto as witnesses, at Pauls Valley, Garvin County, State of Oklahoma, on this 19th day of March, 1942.

| NAMES | POSTOFFICE ADDRESSES |
|---|---|
| s/Joe W. Curtis | Pauls Valley, Oklahoma |
| s/Lillie Hill | Pauls Valley, Okla." |

and not words showing an intention to substitute, under 84 O.S. 177, the lineal heirs of the wife in her place should she predecease the testator."

Title 84 O.S.1971 § 177 reads:

"If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute some other in his place, except as provided in Section 8922 [84 O.S.1971 § 142]."

As previously shown herein (footnote 1) Bruce's will left his estate to Florence "To Have and to Hold unto her and her heirs forever." Appellants urge that it is this language in the will that amounts to an "intention . . . to substitute some other" (appellants) in Florence's place under § 177. Thus, argue appellants, the testamentary disposition to Florence should not fail, because the above wording shows Bruce's intention to substitute appellants in Florence's place. We do not agree with appellants. Appellants cite numerous statutes and cases dealing with presumptions against intestacy; liberal construction of statutes in derogation of common law; and courts sometimes substituting "or" for "and" to arrive at the testator's intentions. We think these citations are applicable not only to this case, but to all will cases; however, we find the two controlling statutes in the present case to be § 177 and § 142.

Normally, a will contains a residuary clause under which a predeceasing devisee or legatee's interest will pass, thus avoiding failure of testamentary disposition or a lapse. However, not uncommon is a will like the one in the present case, that is, one without a residuary clause. Absence of such residuary clause seems to manifest a testator's intent for the property to pass *intestate* where he names only one beneficiary as was done in the present case. It therefore follows that unless the words "and her heirs" amounts to an intention to substitute under § 177, or unless the antilapse statute is applicable, there is a lapse and the property would pass intestate.

Under common law it was necessary to include the words "and his heirs" to convey the fee simple estate.[2] Now under 16 O.S.1971 § 29 every estate demised by will is deemed an estate in fee simple unless limited by express words. The words "and his heirs" at the most are words of *limitation* and *not* words of *substitution*. Lacking a residuary clause or language sufficient to make it appear Bruce's intention was to substitute appellants in Florence's place, we find under § 177 there is a failure of testamentary disposition unless Oklahoma's antilapse statute (84 O.S.1971 § 142) prevents such, which brings us to appellants' second proposition.

2. 78 A.L.R. 992, 994 (1932):
" . . . [T]he rule [was] established in Brett v. Rigden (1568), 1 Plowd. 340, 75 Eng. Reprint 516, that, where a devise of land is to one and his heirs and the devisee dies in the lifetime of the devisor, the heirs of the devisee take nothing by the will, being named therein only to make a fee simple in the devisee . . . . As noted therein, a devisor at common law could not properly make an estate of fee simple in the devisee without mentioning his heirs.

"Though the technical rule requiring such .a mention of heirs to pass a fee simple estate has long since been abolished by statute, and it has been argued that, the rule being abolished, the effect of such rule in causing the lapse of devises and even of bequests and legacies where the devise or gift is to one 'and his heirs' should be relaxed, *it has been* the established doctrine, from that time to the present, that the words 'and his heirs' in such a case are words of limitation and not of purchase, and that such a devise or bequest lapses upon the death of the devisee or legatee in the lifetime of the testator unless an intention on the part of the testator that such phrase shall effect a substitutionary gift appears from the will itself. [Citing cases from Alabama, Arkansas, California, Connecticut, Illinois, Indiana, Kentucky, Maine, Massachusetts, Michigan, Missouri, New Hampshire, New Jersey, New York (wherein the following words were used in In re Wells, 113 N.Y. 396, 21 N.E. 137 (1889) where there was a residuary bequest to legatees: 'to have and to hold the same to them, their heirs and assigns forever'), Pennsylvania, Rhode Island, South Carolina, Texas, Wisconsin, England.]" (emphasis ours)

Appellants' second proposition reads:

"The trial court erred in determining that a wife is not an 'other relation' of the testator as used in 84 O.S. 142."

Section 142, which is Oklahoma's anti-lapse statute, reads as follows:

"When any estate is devised or bequeathed to any child *or other relation* of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants, such descendants take the estate so given by the will, in the same manner as the devisee or legatee would have done had he survived the testator." (emphasis ours)

In this regard, appellants argue Florence was an "other relation" of the testator and that they are Florence's lineal heirs, therefore there was no lapse.

Oklahoma has never ruled on whether a spouse is an "other relation" under § 142. However, there are two cases in Oklahoma which deserve some discussion since they do relate to the issue at hand, but indicate opposite conclusions—De Graffenreid v. Iowa Land & Trust Co., 20 Okl. 687, 95 P. 624 (1908) and Royston v. Besett, 183 Okl. 643, 83 P.2d 874 (1938). In *De Graffenreid,* the court construed the term "nearest relation" as it was used in the laws of descent and distribution of the Creek Nation and found that term *excluded the husband, wife and children.* In *Royston* the wife's will, which had no residuary clause, left all her estate to her husband who predeceased her by four days. The court said:

" . . . The husband, having predeceased his wife, and no intention to the contrary appearing from the will of Gertrude Royston the testamentary disposition to William Royston, (under the wife's will,) failed under the provisions of Section 1605, O.S.1931, 84 Okl.St. Ann. § 177 which reads: 'If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute some other in his place except as provided in Section 8376 [1574].'

"Inasmuch as William Royston left no lineal descendants Section 1574, O.S.1931 [now 84 O.S.1971 § 142], does not apply."

Thus it appears had the husband left lineal heirs (as in the present case) the court may have concluded that the heirs would have taken in place of their parent.

*De Graffenreid* is clearly distinguishable and the quoted part of *Royston* is dicta. Therefore neither case is controlling and we therefore look to other states that have ruled on the issue that is before us.

It appears to be clearly the majority view that a *spouse is not an "other relation"* when used in antilapse statutes.[3] The reasoning behind such interpretation is that for several hundred years, property went to blood relatives, and thus stayed in one blood line. A spouse was not a relative by blood and therefore was not related by consanguinity but by affinity. This reasoning sought to avoid just the situation that is before us, i. e., a person marries another with children, no issue is born of the marriage and the parent of the children predeceases the testator; if the "predeceasing spouse" was considered a "relation," then the property would leave the blood line.

It further seems that if the legislature intended spouses to be other relations, they would have inserted that term in the statute just as they did the term "children."

Section 142 was originally adopted in 1890 and taken directly from the Compiled Laws of the Territory of Dakota, 1887, § 3338, which was adopted from the California Civil Code, § 1310, enacted in 1872, which read almost verbatim as Oklahoma's § 142. California has ruled on the issue

3. 115 A.L.R. 444, 452 (1938):
"In accordance with the construction of the term 'relation' or 'relative' as including only relations by blood and not those by affinity, it has been uniformly held that under statutes providing against a lapse in the case of a devise or legacy to a child or other relation of the testator, a wife or husband of testator or testatrix is not such a relation."

before us several times. The two most cited California cases are In re Pfuelb's Estate, 48 Cal. 643 (1874) and In re Sowash's Estate, 62 Cal.App. 512, 217 P. 123 (1923).

In In re Pfuelb's Estate, the court said: "The word relation, providing that a devisee to a relation shall not lapse by the death of the devisee during the lifetime of the testator, if the devisee leaves lineal descendants, includes only relation by blood, and not by affinity."

In re Sowash's Estate is probably the most cited California case and contains much of the reasoning which is usually applied in such cases.[4] In *Sowash* the court

---

4. In the opinion the court stated:
"There is no express intention in the will to substitute others in place of the wife in the event that she predeceased her husband, a subject hereinafter discussed; and unless it can be said that the wife is a relation of the husband within the meaning of section 1310 of the Civil Code the disposition as to her failed, and the estate was properly distributed to the heirs of the husband, the testator having survived the wife.

"Appellants' first contention involves the meaning of the term 'relation' as applied to the construction of wills.

"The word is a very general and comprehensive term, and may include in its generic sense every relation that arises in social life. Esty v. Clark, 101 Mass. 36, 3 Am.Rep. 320. Lexicographers have defined it as signifying a relation in general so as to include relationship by blood or affinity. In its widest sense, therefore, the word no doubt has this meaning. But in the construction of wills, when courts have been called upon to determine whether a wife is a 'relative' *under statutes preventing lapse, they have by a uniform course of decisions held that the term includes only relationship by blood*, and that a husband, therefore, is not a relative of his wife, *nor a wife a relative of her husband.* Renton's Estate, 10 Wash. 533, 39 P. 145; Supreme Council v. Bennett, 47 N.J.Eq. 39, 19 A. 785; Esty v. Clark, 101 Mass. 36, 3 Am. Rep. 320. The reason for the rule is stated in Renton's Estate, supra, to be that upon a devise to a child or other relative by consanguinity it would be naturally supposed that a testator would intend that his property, upon the death of the devisee before his own, should inure to the benefit of the lineal descendants of his devisee, because such descendants would in fact be his relatives for whose welfare he might be supposed to have a concern, only differing in degree from that which he would feel towards the devisee himself. But in the case of a wife, although a husband might acquire a great affection for her children by a former husband, yet this solicitude would not stop with such children, and the husband's whole estate devised by will to his wife might upon his death descend to utter strangers, to him, to the exclusion of those who might be the natural objects of his bounty. See Estate of Pfuelb, 48 Cal. 643.

"The claim that the devise has not lapsed by reason of the saving clause in section 1310 cannot, therefore, in our opinion be maintained *as such statute applies against a lapse only where the beneficiary is a relation of the testator, and relationship by marriage is not contemplated within the meaning of the section.*

"Nor is this situation altered or in any way affected by section 1334 of the same Code. Appellant presents the argument in this connection that the term 'relation' as used in section 1310 is broad enough to include the meaning given to it under section 1334, which, he contends, includes any person who would succeed to the estate of a testator had he died intestate.

"*The latter section does not apply to the situation under consideration.* As pointed out by respondent, the section is but a general rule dealing with the subject of the interpretation of wills, providing, as it does, that *testamentary dispositions* to the *class of persons enumerated therein,* when the *words used are words of donation* and *not of limitation,* vests the property in the heirs at law of a deceased according to the provision of the Code relating to succession. The manifest object of this section is to give a definite meaning to the different words employed in the statute, which have received various constructions in the different jurisdictions when unaided by statute. As suggested by counsel for respondents, if the testator had made a devise to 'my relations' instead of to 'my wife,' then resort might be had to the section to determine the meaning of the term. The use of the term in the will here under construction did not therefore create a substituted devise. Farnsworth v. Whitney, 102 Me. 296, 66 A. 831; Curley v. Lynch, 206 Mass. 289, 92 N.E. 429.

"Nor does the will, as claimed, show *any intent* on the part of the *testator to make a substitution* to others *in the event that his wife predeceased him.* Of course, if such an intent appeared it would control, and, if legal, be given full effect. Estate of Goetz, 13 Cal. App. 292, 109 P. 492; Estate of Murphy, 157 Cal. 63, 106 P. 230, 137 Am.St.Rep. 110;

clearly held the wife *was not* a relation within the meaning of the statute. The supreme court of Oregon reached the same result in In re Miller's Estate, 117 Or. 399, 244 P. 526 (1926), in which case the court cites numerous jurisdictions and authorities. Maine has reached the same result in Keniston v. Adams, 80 Me. 290, 14 A. 203 (1888) as did Washington in In re Renton's Estate, 10 Wash. 533, 39 P. 145 (1895), and Michigan in In re Spier's Estate, 224 Mich. 658, 195 N.W. 430 (1923) and many others.

We therefore will follow what is clearly the majority view and hold that the term "other relation" as used in 84 O.S. 1971 § 142 does not include the spouse of the testator or testatrix, as the case may be.

Affirmed.

BRIGHTMIRE, P. J., and NEPTUNE, J., concur.

---

Smith v. Secor, 157 N.Y. 402, 52 N.E. 179. Here there is absolutely nothing in the will that can possibly justify the claim that such intention does appear. *The instrument is silent upon the possibility of the wife predeceasing the testator. If he had contemplated a substitutional gift over he should have made such intention clearly appear.* Estate of Sutro, 139 Cal. 87, 72 P. 827.

"It must therefore be held that the will *was made in view of existing conditions at the time of its execution.* Here Sowash gave his estate to his wife, and the *fact that he made no provision in the event that she predeceased him shows that he did not anticipate this contingency.* What his intent may or may not have been after this condition was changed by the death of his wife we have no means of knowing, except from the fact that he allowed the will to stand as originally executed. We are limited in our powers to an interpretation of the will as we find it. *The rule of construction that the intent of the testator must be carried out if possible does not authorize courts to make a new will to conform to what they may think the testator intended. The intent of the testator must be ascertained from the will as it stands.* Estate of Hittle, 141 Cal. [432], 436, 75 P. 53.

"Upon this question, therefore, we conclude that there was no substitution, and that the wife, having predeceased the husband, and she not being a relation of his within the meaning of section 1310 of the Civil Code, the testamentary disposition as to her lapsed and failed." (emphasis ours)