Fred C. SHIELDS, Jr., Susan S. Hickox, and Janet S. Price, Appellants,

v.

W.G. MOFFITT; Energy Trading, Inc., a Delaware Corporation; Energy Reserves Group, Inc.; Sweetwater Minerals of Texas, Inc.; Shelter Petroleum Partnership; George M. Thomas, Jr., O.T. McCall; the First National Bank & Trust Company, Muskogee, Oklahoma; Arch Gilbert, Jr., Harry D. Gibbs; and Global Gas Corporation, Appellees.

No. 57980.

Supreme Court of Oklahoma.

June 26, 1984.

Carl Michael Smith, Oklahoma City, for appellants and counter-appellees.

William P. Warden, Linn & Helms, Oklahoma City, for appellees and counter-appellants.

LAVENDER, Justice:

Fred C. Shields, Jr., Susan S. Hickox and Janet S. Price, plaintiffs below, executed and delivered an oil and gas lease covering two tracts in McIntosh County, Oklahoma providing for a primary term of three years to W.G. Moffitt, one of the defendants below, said lease containing a special clause which provided:

"This lease may be assigned only with the written consent of the lessors."

Thereafter, Moffitt assigned a portion of the lease to a third party assignee without the written consent of the lessors/plaintiffs.

Plaintiffs brought suit against Moffitt and his assignees, the petition consisting of two causes of action. The first cause of action (not involved in this appeal) seeks cancellation of the lease for failure to diligently market or produce gas within a reasonable time after discovery. The second cause of action seeks forfeiture and cancellation of the lease by reason of Moffitt's assignment of portions of the lease without the written consent of lessors in violation of the inserted clause.

Plaintiffs filed a motion for summary judgment directed to their second cause of action. The trial court granted partial summary judgment in favor of the plaintiffs by holding and determining that the assignments by Moffitt and to all assignees claiming under him were invalid and void, and further determined that said invalid and void assignments by Moffitt did not void Moffitt's lease.

Plaintiffs appealed from that portion of the trial court's determination that the assignments determined by the trial court to be void and invalid did not result in a cancellation and termination of Moffitt's lease.

Moffitt and his assigns, together with those holding under the Moffitt assignment filed a counter-appeal, alleging that the special clause is void and of no force and effect.

The Court of Appeals, Division 3, held and determined that the clause is valid and a purported assignment in violation of its terms gives the lessor the right to terminate the lease.

We have heretofore granted certiorari. The opinion of the Court of Appeals is withdrawn and the following substituted in lieu thereof.

We address the question of whether the clause in the oil and gas lease which provides that the lease may be assigned only with the written consent of the lessors constitutes an unlawful restraint on alienation which renders the restrictive clause void.

## I.

An "oil and gas lease" under the law of Oklahoma is the hybrid offspring of an intermarriage between real and personal property, an offspring which is neither entirely real nor personal property, yet which bears distinguishing characteristics of both. Its hydra-headed status is summarized in *Hinds v. Phillips Petroleum Co.*[1] (pp. 698, 699) in the following language:

"The cluster of rights comprised within an instrument we refer to 'in deference to custom' as an 'oil and gas lease' includes a great variety of common-law interests in land. These fall under the rubric of *incorporeal hereditament* or *profit à prendre*. If granted to 'one and his heirs and assigns forever', the interest is in fee. Where, as here, it is limited for a term of years, it is denominated a

chattel real. Whatever the name used, *the interest represented is one in land,* although the lease itself does not operate as a conveyance of any oil or gas *in situ* but constitutes merely a right to search for and reduce to possession such of these substances as might be found. Rather than a true lease, it is really a grant *in praesenti* of oil and gas to be captured in the lands described during the term demised and for so long thereafter as these substances may be produced.... Although, as shown, an oil and gas lease creates an *interest or estate in realty,* it is not deemed *per se* real estate. In this respect a distinction is recognized in our law between *real estate* and an *estate in real property."*

In *Hinds,* supra, we held that an oil and gas lessee by making a contract with a third party to sell and deliver casinghead gas at the wellhead on the lease premises, thereby effectively transferred to the third party the lessee's lease-granted right to lay pipelines on the demised land. In so holding, we determined that if the exclusive right to extract the minerals is conveyed, such right is divisible and profit à prendre capable of legal existence as a servitued "unattached" to land (in gross), and may be transferred in gross, either in whole or in part, as an *estate in real property.*

In *Gypsy Oil Co. v. Cover,*[2] we said (189 P. at p. 544): "This Court held in the case of *Roach v. Junction Oil & Gas Co.* [72 Okl. 213], 179 Pac. 934, 935 [1919], that after gas was found upon the leased premises (within the primary term of the lease) in paying quantities, *the lessee became vested with a limited estate in the leased premises for further operations in accordance with the terms of the lease*—citing *Brennan v. Hunter* [68 Okl. 112], 172 Pac. 49 [1918], citing numerous cases."

From the foregoing, we conclude that the holder of an oil and gas lease during the primary term or as extended by production has a base or qualified fee, i.e.,

---

1.  591 P.2d 697 (1979).

2.  78 Okl. 158, 189 P. 540, 11 A.L.R. 129 (1920).

an estate in real property having the nature of a fee, but not a fee simple absolute.[3] In *Nicholson Corporation v. Ferguson,*[4] (243 P. at p. 200) this Court defined an "estate" in real property as follows: "The degree, quantity, nature and extent of interest, which a person has in real property is usually referred to as an estate. It varies from absolute ownership down to naked possession."

## II.

We next consider the nature and the extent of the respective estates which became vested in plaintiffs and in the defendant Moffitt and his assigns as determined by the language in the lease: "This lease may be assigned only with the written consent of the lessors."

■ It is observed that the quoted clause provides neither penalty, forfeiture, termination, reversion or other consequences inuring to the *lessors* by reason of Moffit's breach of the purported prohibition against nonconsensual assignment. If the "lease" be construed as granting a qualified fee estate *upon a condition subsequent,* there is no need for a clause reserving a right of re-entry by plaintiffs in order for plaintiffs to avail themselves of the reversion. *Ross v. Sanderson.*[5] On the other hand, if the interest conveyed was a *determinable qualified fee,* the absence of a provision for termination inuring to the lessors in the clause restricting assignments negates a possibility of reverter in the form of a retained interest in the leasehold by the plaintiffs. *Bonebrake v. McNeill.*[6]

However, as we observed in *Bonebrake,* supra (272), this Court determined in *Kassner v. Alexander Drug Co.,*[7] that by virtue of what is now 60 O.S.1981, § 29, 30 and 40, the "distinctions between deeds on condition subsequent and deeds on conditional limitation are abolished, and all future interests are either reversions or remainders * * * and every remainder 'is to be deemed a conditional limitation' and are alienable."

■ We therefore conclude that the clause in question in effect either retained a reversionary interest in the plaintiffs/lessors, or it conveyed a leasehold estate to the lessee, subject to a contingent remainder.

■ An estate in reversion is the residue of an estate left by operation of law in the grantor or his heirs commencing in possession on the determination of the particular estate granted or devised. It is not subject to a condition precedent.[8] Therefore, as in the case of a qualified fee estate upon a condition subsequent, it requires no reservation of a right of re-entry in the grantor in order for the grantor to avail himself of a forfeiture.

■ On the other hand, a contingent remainder estate requires the occurrence of some contingent event in the future. No present or particular interest is retained by the grantor. In the event of the occurrence of the contingency, the grantor's rights only then accrue not by operation of law (as in the case of a reversionary estate), but by the terms of the agreement of the parties.[9] In the case at bar, since the agreement of the parties does not specify a forfeiture in the event of a breach of the

3. See also Kuntz, Law of Oil and Gas, § 26.2: "Where the lease is capable of being extended indefinitely by production of oil or gas, the interest created is a fee. Such a fee is a base, qualified, or determinable fee for the reason that it may not endure forever. In these instances in which the courts have had the occasion to identify by name the estate created by such an oil and gas lease, the interest created has been identified as a determinable fee where the lease provided for a fixed term and for so long thereafter as oil or gas is produced...."

4. 114 Okl. 10, 243 P. 195 (1925).

5. 63 Okl. 73, 162 P. 709 (1917).

6. Okl. 491 P.2d 269 (1971).

7. 194 Okl. 36, 147 P.2d 979 (1943).

8. Black's Law Dictionary, 5th ed., p. 1186; 28 Am.Jur.2d Estates, Sec. 171.

9. Black's Law Dictionary, 5th ed, p. 1162; 28 Am.Jur.2d Estates, Sec. 195, 196.

lease clause, no forfeiture of the lease can result from the breach.

The oil and gas lease from plaintiffs to Moffitt contains the following "granting" clause: "... (Lessor) has granted, demised, leased and let and by these presents does grant, demise, lease and let unto said lessor, for the sole and only purpose of mining and operating for oil and gas...."

"In consideration of the premises the said lessee covenants and agrees:" (followed by specific enumerated covenants, one of which is, "This lease may be assigned only with the written consent of the lessors.")

From the clear language of the lease, it is apparent to us that the intention of the parties was to create no more than a contingent remainder in plaintiffs/lessors, and that since no forfeiture was prescribed in consequence of the assignment by lessee without the consent of lessors, no forfeiture would follow.

### III.

Having determined that no forfeiture is available to plaintiffs/lessors, we next turn to the question of whether the clause itself is void as being an impermissible restraint on alienation.

The rule against restraint on alienation and the reason underlying the rule are tersely stated in Coke on Littleton, 223a as follows: "It is absurd and repugnant to reason that he that hath no possibility to have the land revert to him should restrain his feoffee in fee simple of all his power to alien."

As we have heretofore pointed out, the only consequence of a breach of the lease covenant here is confined to a claimed prohibition of the lessee to assign without the written consent of lessors. We further observe that the purported right to give or withhold consent to an assignment by lessee inures only to the plaintiffs/lessors personally and not to their successors, grantees, heirs or assigns. Thus, in the event of

plaintiffs' conveyance of their estate in the lands, they would become third parties having the power to give or withhold consent to alienation of property belonging to others than themselves.

In *Lohmann v. Adams*,[10] we expressly determined that restraints upon alienation where there are no provisions for forfeiture or reversion are "disabling restraints" and void, with the possible exception of restraints imposed on equitable interests under a trust. *Lohmann* expressed no view as to the latter restraints, and we express none here.

Neither do we pass upon the validity of a suitably limited provision restraining alienation of a fee where imposed in reasonable protection of some interest in the premises retained by a grantor or third person, for the reason that no such peculiar interest is here shown.[11]

We likewise express no view herein as to what effect a forfeiture or penalty clause might have resulted had it accompanied the clause in the lease purporting to restrict right of sale without the consent of the plaintiffs/assignors.

We hold that the lease clause in the case at bar purporting to restrict alienation by the lessee of the oil and gas lease without the consent of the lessors is void and of no force or effect.

The judgment of the trial court is reversed, and judgment is entered in favor of Appellees and Counter-Appellants on Appellants and Counter Appellee's motion for partial summary judgment on the second cause of action of the petition. The case is remanded for further proceedings not inconsistent with the views herein expressed.

BARNES, C.J., SIMMS, V.C.J., and DOOLIN and WILSON, JJ., concur.

HODGES, J., concurs in result.

---

**10.** Okl. 540 P.2d 552 (1975).

**11.** See 42 A.L.R.2d 1258, et seq.

OPALA, J., concurs in part; dissents in part.

HARGRAVE and KAUGER, JJ., dissent.