**In re HANSON OIL COMPANY, INC., Debtor(s).**

**In re Jack HANSON, Individually, Debtor(s).**

**Bankruptcy Nos. 88–40239, 88–40240.**

United States Bankruptcy Court, S.D. Illinois.

March 13, 1989.

---

James Van Winkle, McLeansboro, Ill., for B.I.C. Oil Co., Inc. and Monroe Webb & Mary C. Hornbrook.

A. Courtney Cox, Benton, Ill., for Fir Community.

Feldman & Wasser, Springfield, Ill., for debtors.

Charles E. Jones, McLeansboro, Ill., for trustee.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

■ This matter is before the Court to consider the validity of a notice of rejection of lease filed by lessors of an oil and gas lease owned in part and operated by debtor, Hanson Oil Co., Inc. Lessors allege that the trustee in bankruptcy has failed to assume or reject such oil and gas lease within 60 days as required by § 365(d)(4) of the Bankruptcy Code. Lessors assert, therefore, that debtor's interest in the oil and gas lease must be deemed rejected.

Section 365(d)(4) provides in pertinent part:

... [I]n a case under any chapter of this title, if the trustee does not assume or reject an *unexpired lease of nonresidential real property* under which the debtor is the lessee within 60 days after the date of the order of relief, ... then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4)(emphasis added). The trustee and a secured creditor, who have objected to the notice of rejection, contend that an oil and gas lease under Illinois law is not an "unexpired lease" as contemplated by § 365(d)(4) and that the trustee thus was not required to assume debtor's interest in the oil and gas lease to prevent a deemed rejection of the lease.

The oil and gas lease in question, known as the "Rex Webb" lease, was granted for a primary term and for so long thereafter as oil and gas were produced. Oil was discovered on the Rex Webb lease during the primary term, and an oil well was producing at the time of debtor's bankruptcy. The lease contained a "cessation of production" covenant providing that if, after discovery of oil and gas, production should cease, the lease would not terminate if additional reworking or drilling operations were commenced within 60 days.

Debtor, who had financed operations on the Rex Webb lease by the sale of fractional working interests to investors, retained a portion of the working interest as well as the right to operate the lease. The lease provided for payment of a standard one-eighth royalty to lessors from the production of oil and gas. The lease contained no provision for delay rental payments or other periodic payments to lessors.

Whether or not the instant lease comes within the purview of § 365(d)(4) requires a determination of the interest created by an oil and gas lease under state law. *See In re Petroleum Products, Inc.*, 72 B.R. 739 (Bankr.D.Kan.1987); *Matter of Myklebust*, 26 B.R. 582 (Bankr.W.D.Wis.1983). Illinois law recognizes that an oil and gas lease, while not granting title to the oil itself, grants to the lessee the right to enter upon the surface of the land and to reduce the oil and gas to the lessee's possession. *Ohio Oil Co. v. Daughetee*, 240 Ill. 361, 88 N.E. 818 (1909). It is uniformly held that leases which contain a primary term requiring exploration or development within a stated period, followed by a "thereafter" clause, are to be construed as conveying a freehold interest or estate in that, unlike an estate strictly for a term of years, the lessee's right under such a lease may continue for an indefinite period. *Dethloff v. Zeigler Coal Co.*, 82 Ill.2d 393, 45 Ill.Dec. 175, 412 N.E.2d 526 (1980); *Transconti-*

*nental Oil Co. v. Emmerson,* 298 Ill. 394, 131 N.E. 645 (1921); *Ohio Oil Co. v. Daughetee.* Under Illinois law, the grant of this right to go on the land and remove oil "is, in effect, a sale of a part of the land." *Transcontinental Oil Co. v. Emmerson,* 298 Ill. 394, 403, 131 N.E. 645; *Ohio Oil Co. v. Daughetee.*

While, through common usage and convenience, the operative act whereby the oil and gas operator acquires the right to explore and produce oil from the land, giving as consideration therefor a share of that produced, is denominated a "lease," oil and gas leases differ in many respects from ordinary leases for land or buildings that are governed by common law landlord-tenant principles. *See* Williams and Meyers, 1 *Oil and Gas Law,* § 202.1, at 22–24 (1986); Summers, 1A *Law of Oil and Gas,* § 151 (1954). For example, one possessing a life estate in land may make ordinary leases for a term not to outlast his own estate, but he has no right to lease the land for the mining of oil and gas, as this would amount to "waste" for which he would be liable to the remainderman. *See* 18 Ill. L. & Prac. *Estates,* § 27, at 22 (1956). The Illinois Supreme Court, in *Central Standard Insurance Co. v. Gardner,* 17 Ill.2d 220, 238, 161 N.E.2d 278 (1959), commented on this distinction:

> Oil and gas, like other minerals, is considered a wasting asset, a part of the real estate subject to depletion and exhaustion by removal, although such removal may continue over a period of years before exhaustion occurs. Once exhausted, its value is gone and not subject to further recovery. From the very nature of oil and gas royalties and bonuses, one cannot class them in the same category as the "rentals" or "income" realized annually from the normal, recurring production of crops from real estate or customary annual cash rentals paid for the surface use of real estate.

In the instant case, the oil and gas lease at issue is of indefinite duration by reason of its "thereafter" clause and, under Illinois law, is not an ordinary lease but conveys a freehold estate. A freehold estate, defined as an estate of uncertain duration or a right of title to land, is clearly distinct from a "leasehold," which is an estate for a fixed number of years. *See* Black's Law Dictionary, at 793, 1036 (rev. 4th ed. 1968). Such an oil and gas lease, therefore, may not be equated with the "lease" of § 365(d)(4) simply because of the terminology used to describe this legal relationship.

The Court is aware of no case that has addressed the applicability of § 365(d)(4) to oil and gas leases under Illinois law. However, decisions based upon the characterization of oil and gas leases under the laws of other states are instructive in determining whether an Illinois oil and gas lease constitutes an unexpired lease for purposes of § 365(d)(4). In two decisions interpreting Oklahoma oil and gas law, the courts in *In re Heston Oil Co.,* 69 B.R. 34 (N.D. Okla.1986), and *In re Clark Resources, Inc.,* 68 B.R. 358 (Bankr.N.D.Okla.1986), ruled that oil and gas leases were neither unexpired leases nor executory contracts under § 365 requiring assumption or rejection by the trustee. The district court in *Heston* observed that under Oklahoma law concerning oil and gas leases, use of the term "lease" was more in deference to custom than a description of the legal relationship involved. The court cited Oklahoma case law holding that, rather than a true lease, an oil and gas lease was really a "'[present] grant of oil and gas to be captured in the lands described during the term demised and for so long thereafter as these substances may be produced.'" *Heston,* at 36, quoting *Shields v. Moffitt,* 683 P.2d 530, 532 (Okla.1984). Thus, the interests arising from an oil and gas lease in Oklahoma are "akin to a *profit á prendre* and are generally considered as estates in real property having the nature of a fee." *Heston,* at 36.

The court in *Clark Resources* expressly followed *Heston* in finding that § 365 does not apply to an Oklahoma oil and gas lease. The court found from the legislative history of § 365(d)(4) that it was the Congressional intent that § 365(d)(4) be applied to "traditional" leases of shopping centers and other nonresidential structures. The court, adopting the *Heston* rationale that

an Oklahoma oil and gas agreement grants a *profit à prendre* rather than a leasehold estate, concluded that the oil and gas lease was not a lease as contemplated by § 365(d)(4).

Illinois law relating to oil and gas leases is similar to Oklahoma law as interpreted in *Heston* and *Clark Resources* in that an Illinois oil and gas lease is not an ordinary lease but constitutes an interest in realty. The reasoning of these cases is thus persuasive authority for finding that § 365(d)(4) does not apply to an Illinois oil and gas lease.

In a third decision based on Ohio law, the court in *In re Gasoil, Inc.*, 59 B.R. 804 (Bankr.N.D.Ohio 1986), held that § 365(d)(4) applied to an oil and gas lease because, under Ohio law, the interest created was in the nature of a leasehold for a term of years rather than a freehold estate. The leases in question provided for monthly royalty payments and for the payment of annual rental in any year in which there was no production. The court found that this made the leases run in successive periods of one year similar to automatically renewing periodic tenancies.

Because of the characterization of an oil and gas lease under Ohio law as a leasehold estate, the *Gasoil* analysis is not applicable to an Illinois gas and oil lease described as conveying a freehold interest. Ohio case law, as discussed in *Gasoil*, holds that an oil and gas lease for an indefinite term " 'does not rise to the dignity of a freehold estate,' " (*Gasoil*, at 807, quoting *Acklin v. Waltermier*, 19 Ohio C.C. 372, 379 (1899)), while Illinois case law uniformly holds that such a lease, by reason of its indefinite term, conveys a freehold estate. The *Gasoil* decision is, therefore, distinguishable from the instant case and cannot be relied on in determining the applicability of § 365(d)(4) to an Illinois oil and gas lease.

In the course of its decision, the *Gasoil* court referred to § 365(m), which provides:

> For purposes of this section 365 ..., leases of real property shall include any rental agreement to use real property.

11 U.S.C. § 365(m). The court stated that it was unnecessary to classify the oil and gas leases in question either as leases or as licenses, since they at least conveyed a right to use real property and so constituted leases within the meaning of § 365(d)(4). By its terms, however, § 365(m) covers agreements that are both (1) rental agreements and (2) for the use of real property. It does not follow that any use of real property is a lease, as it is necessary to determine in the first instance whether a "rental agreement" is involved. *See In re Harris Pine Mills*, 862 F.2d 217 (9th Cir. 1988). The somewhat circular definition of § 365(m), therefore, does not obviate the necessity of discerning whether a lease exists under state law before § 365(d)(4) is found to be applicable. *In re Harris Pine Mills*, 862 F.2d 217.

While the *Gasoil* court interpreted § 365(m) to justify a broad construction of § 365(d)(4), consideration of the purpose and effect of § 365(d)(4) lends support for the conclusion that this section should not be extended to the instant oil and gas lease. Section 365(d)(4) was enacted to protect affected parties, particularly shopping centers and their solvent tenants, from the commercial vacuum resulting from prolonged delay of the trustee in administering a bankruptcy case. *See In re Harris Pine Mills*, 79 B.R. 919 (D.Or.1987); *In re Clark Resources, Inc.* The effect of a rejection of a lease under § 365(d)(4) is to give rise to a breach, which allows the landlord to file a claim for damages for unpaid rent reserved under the lease. *See* 11 U.S.C. § 365(g); 2 *Collier on Bankruptcy*, § 365.08 (1988).

Unlike the ordinary lease that would be held in abeyance pending the trustee's decision to assume or reject, the oil and gas lease in question provides for automatic termination upon cessation of production for the required period so that the lessors would not be prejudiced in the event of delay or nonperformance under the lease. *Cf. Matter of Compass Development, Inc.*, 55 B.R. 260 (Bankr.D.N.J.1985): oil and gas lease terminated by its terms after filing of bankruptcy petition notwithstanding auto-

matic stay; *see also In re Trigg*, 630 F.2d 1370 (10th Cir.1980); *In re Anne Cara Oil Co., Inc.*, 32 B.R. 643 (Bankr.D.Mass.1983). Thus, the purpose of § 365(d)(4) to require timely action by the trustee would not be served by applying the requirements of § 365(d)(4) to such oil and gas lease. Moreover, since no periodic rents are reserved under the oil and gas lease, the trustee's rejection of the oil and gas lease would give rise to no claim for damages as contemplated by § 365(d)(4). The unique characteristics of the oil and gas lease, therefore, make application of § 365(d)(4) to such an agreement inappropriate.

For the reasons stated, the Court finds that the oil and gas lease in question does not constitute an "unexpired lease" within the meaning of § 365(d)(4). The trustee was not required to assume or reject the debtor's interest in the oil and gas lease under this section, and the lessors' notice of rejection of lease is void and of no effect.

IT IS ORDERED, therefore, that the trustee's objection to the lessors' notice of rejection of lease is SUSTAINED.