OPINION BY P. THOMAS THORNBRUGH, JUDGE:
¶1 Daniel W. Lowther, as personal representative of the estate of Margaret J. Stolba, deceased (Decedent), appeals a decision by the district court finding that a restriction on the alienation of property in the Decedent's will was invalid, and distributing the subject property to decedent's heirs.
BACKGROUND
¶2 Decedent's will was admitted for probate in December 2012. It was evidently composed by Decedent without legal assistance. Among its provisions was this:
The home stead will remain in trust, Not to be sold or split. All four of you have got to get along. Work it out, you should be able to have fun doing things there. Everyone should behave themselves. (sic)
In January 2017, probate was still open, and one of Decedent's sons, Mark S. Stolba, filed an application to distribute the remaining property in the form of the homestead[1] because either 1) the "trust" failed for lack of required elements, or 2) the homestead provision created an unenforceable perpetuity or restriction on alienation.
¶3 In October 2017, the district court entered a decree of distribution, distributing the homestead to Decedent's four children, per the rules of intestate succession. Representative Daniel Lowther filed a motion for new trial, which was denied. He now appeals.
STANDARD OF REVIEW
¶4 Probate proceedings are of equitable cognizance. In re Estate of Holcomb , 2002 OK 90, ¶ 8, 63 P.3d 9. We will not disturb the trial court's decision unless it is "found to be clearly contrary to the weight of the evidence or to some governing principle of law." In re Estate of Maheras , 1995 OK 40, ¶ 7, 897 P.2d 268. This matter involves questions of statutory interpretation. We are required to review questions of law, such as the construction of statutes, under a de novo standard of review. In re Estate of Jackson , 2008 OK 83, ¶ 9, 194 P.3d 1269.
ANALYSIS
¶5 Appellant states the following questions on appeal, which we reproduce below.
1. Whether the trial court erred in granting Appellee's application for distribution in *530 that Appellee did not contest the validity of the admitted will within 90 days and by the operation of 58 O.S. § 67, the probate is conclusive and the trial court did not have jurisdiction to hear and decide the application for distribution.
2. Whether the trial court erred in granting Appellee's application for distribution in that he did not contest the validity of the admitted will within 90 days and by the operation of 58 O.S. § 67, the application for distribution was time barred.
3. Whether the trial court erred in granting Appellee's application for distribution in that the application was not a sworn petition as required by 58 O.S. § 61.4.
4. Whether the trial court erred in granting Appellee's application for distribution in that no citations were served on the executors, legatees, devisees and heirs within the state as required by 58 O.S. § 62.
5. Whether the trial court erred in granting Appellee's application for distribution in that the order admitting the will to probate establishes the will as valid and was never revoked.
6. Whether the trial court erred in granting Appellee's application for distribution in that the testamentary trust in the admitted will contained a power to sell, exchange or otherwise convey the real or personal property vested in Appellant, and by the operation of 60 O.S. § 175.47 the Rule Against Perpetuities is not violated and the testamentary trust may exist in perpetuity.
7. Whether the trial court erred in granting Appellee's application for distribution in that the testamentary trust in the admitted will must be construed and or reformed to avoid invalidity based on the Rule Against Perpetuities by the operation of 60 O.S. § 75.
8. Whether the trial court erred in granting Appellee's application for distribution in that the testamentary trust in the admitted will must be construed and/or reformed to avoid invalidity based on the Rule against Perpetuities by the operation of 60 O.S. § 77.
¶6 The core question before us is whether the "trust" provision of the will represents an unenforceable perpetual ban on the alienation of real property. We will first address Appellant's jurisdictional arguments, however. These arguments appear to arise from a fundamental misunderstanding of the legal nature of the proceedings. Appellant argues that Appellee attempted to contest the validity of the will , thereby rendering it entirely ineffective, and forcing an intestate probate, and that the district court rejected the will and proceeded with an intestate distribution. This is incorrect. Appellee's "application for distribution" specifically requested that the court find the will valid, and requested the court to interpret whether a specific clause of the will was legally enforceable.
I. The Operation of 58 O.S. § 67
¶7 Appellant argues that, by the operation of 58 O.S. § 67, the probate was "conclusive" three months after the will was admitted, and the trial court did not have jurisdiction to hear and decide the application for distribution. This argument arises from a misreading of § 67. Section 67 must be read in conjunction with 58 O.S. § 61, which states:
When a will has been admitted to probate, any person interested therein may at any time within three (3) months from the date the will was admitted to probate contest the same or the validity of the will. For that purpose he must file in the court in which the will was proved a sworn petition in writing containing his allegations, that evidence discovered since the probate of the will, the material facts of which must be set forth, shows:
1. That a will of a later date than the one proved by the decedent, revoking or changing the will, has been discovered, and is offered; or
2. That some jurisdictional fact was wanting in the probate; or
3. That the testator was not competent, free from duress, menace, fraud, or undue influence when the will allowed was made; or
4. That the will was not duly executed and attested.
¶8 Section 61 makes it clear that challenges to the validity of the will in toto, or to probate jurisdiction must be made within *531 three months of a will's admission to probate. This does not include any request to interpret a specific clause, including the argument here that the alienation clause of the will is legally unenforceable. A party requesting that the court interpret a provision of a will inherently relies on the premise that a valid will exists.
II. The Sworn Petition As Required by 58 O.S. § 61(4)
¶9 Appellant's next argument springs from the same misapprehension. Section 61 regulates challenges to the validity of a will in toto , but not requests to interpret a particular provision. No "sworn petition" is required in these circumstances.
III. "The Service of Citations on the Executors, Legatees, Devisees and Heirs Within the State As Required by 58 O.S. § 62."
¶10 The same argument applies here. The provisions of 58 O.S. §§ 61 through 67 govern attempts to have the document presented as the testator's will declared invalid, but not requests for distribution or to interpret the will's provisions.
IV. Whether the Trial Court Erred In Granting Appellee's Application for Distribution In That the Order Admitting the Will to Probate Establishes the Will As Valid and Was Never Revoked
¶11 This argument also springs from the misapprehension that Appellee was attempting to "revoke" the admission of the will to probate. It is not valid in this context.
V. The Question of the "Trust" Provision
¶12 We now return to the core question. The will contained two significant provisions. The first was the "homestead" provision, which stated (sic):
The home stead will remain in trust, Not to be sold or split. All four of you have got to get along. Work it out, you should be able to have fun doing things there. Everyone should behave themselves.
The second is the "powers" provision, which states:
I name and appoint Daniel W. Lowther and Teresa Michele Lauscher as Co-Personal Representatives and request that they accept appointment. ... Without limiting any powers conferred by law, I declare that they shall have the power to sell, lease, mortgage, and dispose of all or any part of my estate without the necessity of obtaining court approval ... and to do all other acts related to administration and disposition of my estate that are required of them as Personal Representatives.
¶13 The first provision, as written, apparently violates the first part of 60 O.S. § 175.47 - Suspension of absolute power of alienation-Period of suspension.
A. Except as otherwise provided in subsection B of this section, the absolute power of alienation of real and personal property, or either of them, shall not be suspended by any limitations or conditions whatever for a longer period than during the continuance of a life or lives of the beneficiaries in being at the creation of the estate and twenty-one (21) years thereafter.
¶14 The mandate that the homestead is "not to be sold or split" without a time limitation facially violates § 175.47. Appellant argues, however, that this directive is saved by the second part of § 175.47 which states:
The absolute power of alienation is not suspended if there is any person in being who, alone or in combination with one or more others, has the power to sell, exchange, or otherwise convey the real or personal property.
¶15 Appellants argue that, pursuant to the second part of § 175.47, there is a person in being who has the power to sell the real property because of the clause stating that the Co-Personal Representatives "have the power to sell, lease, mortgage, and dispose of all or any part of my estate."
¶16 The will is specific that the property is "not to be sold." If the Co-Personal Representatives had attempted to sell a validly restrained property pursuant to their general powers of sale , we are certain that this specific restraint would control over the general power. We find that the provisions of the will permanently suspending the power *532 of alienation as to the homestead are not saved by the grant of a general power of sale to the Co-Personal Representatives.
VI. "Reformation"
¶17 Appellant next argues that the combination of 60 O.S. § 75, "Reformation of interests violating rule against perpetuities," and 60 O.S. § 77, "Reformation of offending instruments," required the trial court to essentially re-write the "homestead" clause of the will to make it compliant with the alienation prohibition of § 175.47. These statutes state:
60 O.S. § 75 - Reformation of interests violating rule against perpetuities-Intent
Any interest in real or personal property that would violate the rule against perpetuities shall be reformed, or construed within the limits of the rule, to give effect to the general intent of the creator of that interest whenever that general intent can be ascertained. This provision shall be liberally construed and applied to validate such interest to the fullest extent consistent with such ascertained intent.
60 O.S. § 77 - Reformation of offending instruments
If an instrument violates the rule against perpetuities, but can be reformed or construed in accordance with the provisions of this act, it shall not be declared totally invalid. Rather, the provisions thereof that do not offend the rule shall be enforced, and only the provisions thereof that do violate, or might violate, the rule shall be subject to reformation or construction under the doctrine of cy pres within the terms of this act.
¶18 The immediate problem, however, is that this case does not truly involve a perpetuity , but involves a restraint on alienation.
¶19 The rule against perpetuities is one of property law which precludes the postponement of vesting of contingent interests for a period of time considered to be too long. Denney v. Teel , 1984 OK 63, 688 P.2d 803. A restraint on alienation does not have any contingent interest or future vesting of rights. "Restraints upon alienation where there are no provisions for forfeiture or reversion are 'disabling restraints' and void." Shields v. Moffitt , 1984 OK 42, ¶26, 683 P.2d 530. Commenting on Kentucky law, Denney noted the same distinction: The common-law rule against restraint on alienation is designed to prevent owners from losing their power to alienate property while the rule against perpetuities is designed to prevent interests from being created too far in the future. Id ., n. 18. See also Producers Oil Co. v. Gore , 1980 OK 62, 610 P.2d 772 (in contrast to rules against restraints on alienation, the rule against perpetuities, although aimed at preventing restrictions on alienation, is directed toward duration of the rights rather than toward absolute restraints); 70 C.J.S. Perpetuities § 12 ("the rule against perpetuities limits the power of an owner to create future interests, whereas the rule against restraints on alienation prohibits the owner from creating provisions blocking his or her grantee from disposing of the property").
¶20 In this case, the will as written clearly creates a restraint on alienation rather than an impermissibly remote future interest - the homestead is "not to be sold or split." Title 60 O.S. §§ 75 and 77 do not apply at all to void restraints on alienation. In reforming a perpetuity that vests too late, a court can simply shorten the vesting period and maintain the grantor's wishes in all other ways. It is not possible to reform an absolute restriction on alienation and maintain the grantor's intent.
¶21 Further, although these statutory sections were enacted almost 50 years ago, there are only three Oklahoma cases interpreting them. Producers Oil Co. v. Gore held that the rule against perpetuities did not apply to interests created by preemptive option provisions of oil and gas lease operating agreements. Am. Nat. Res., LLC v. Eagle Rock Energy Partners, L.P. , 2016 OK 67, 374 P.3d 766, discussed the preservation of the issue of reformation for appeal, and found it had not been preserved. Matter of Estate of Crowl , 1987 OK 13, 737 P.2d 911, noted that, where an instrument is fairly susceptible to two or more constructions, the court should choose the one which does not violate the rule against perpetuities.
¶22 None of these cases give any indication of how far a court may go in "reforming" an *533 instrument that violates the rule. As noted in In re Prather's Estate , 1974 OK CIV APP 24, n. 4, 527 P.2d 211, however:
The rule of construction that the intent of the testator must be carried out if possible does not authorize courts to make a new will to conform to what they may think the testator intended. The intent of the testator must be ascertained from the will as it stands.
¶23 Even if we could ascertain that the testator intended the restriction on alienation to last only for the life of her children[2] , we are left with no clue as to the disposition of her property after that period. Simply assuming the property would fall into the estate residual does not solve the problem because the will has no residuary beneficiary. We find that, even if the void restraint on alienation could legally be reformed pursuant to §§ 75 & 77, the will is so defective in this area that a court could not reform it without re-writing the will to include a final disposition that is no more than a guess of the testator's intent.
¶24 As such, when faced with a trust provision that appears to lack any duties for the trustee, and contains an absolute prohibition on alienation, coupled with a will that gives no clue as to what the final disposition of the property should be, we find the trial court did not err in holding the homestead provisions of the will invalid, and distributing the property as a partial intestacy.
CONCLUSION
¶25 We find no error in the district court's decision.
¶26 AFFIRMED .
FISCHER, P.J., and GOODMAN, J., concur.

In the opinion, the word "homestead" is used in its generic meaning, and not in its legal sense.

Even this is less than certain, as the will appears to mention non-beneficiaries using the property, including school-age children.